1

2

3

4                      UNITED STATES DISTRICT COURT

5                    NORTHERN DISTRICT OF CALIFORNIA

6

7   LAWANDA ANDERSON,                    Case No.  13-cv-05555-DMR
                Plaintiff,
8                                        **ORDER GRANTING IN PART**
                                         **DEFENDANT'S MOTION FOR**
9          v.                            **SUMMARY JUDGMENT; DENYING**
                                         **PLAINTIFF'S MOTION TO AMEND;**
10  CITY AND COUNTY OF SAN               **DENYING MOTION TO SEAL**
    FRANCISCO,
11              Defendant.               Re: Dkt. Nos. 44, 67, 77

12          This action is an employment dispute between Plaintiff Lawanda Anderson and her

13  employer, Defendant City and County of San Francisco ("CCSF").  Plaintiff asserts five claims for

14  relief: federal and state claims for race discrimination and retaliation pursuant to Title VII and the

15  California Fair Employment and Housing Act, ("FEHA"), and a FEHA claim for failure to prevent

16  discrimination.  Before the court is Defendant's motion for summary judgment or partial summary

17  judgment.  ["MSJ," Docket No. 44.]  The court held a hearing on December 10, 2015.  For the

18  reasons stated below, the MSJ is **granted in part.**

19          On December 21, 2015, Plaintiff filed a motion for leave to file a second amended

20  complaint.  [Docket 77.]  This matter is suitable for determination without oral argument.  Civil

21  L.R. 7-1(b).  For the reasons stated below, this motion is **denied**.

22          Plaintiff's motion to file under seal the Declaration of Kevin Brunner and all attached

23  exhibits [Docket No. 67] is **denied** for the reasons stated below.

24                          **I.      FACTS**

25          The following facts are undisputed unless otherwise stated.

26  **A.  Background Regarding Plaintiff's Employment**

27          Plaintiff currently works as a paramedic for the San Francisco Fire Department ("SFFD" or

28  "Department"), where she was hired in March 2006.  For most of her employment, Plaintiff was

United States District Court
Northern District of California

assigned to Station 49, where all SFFD paramedics and Emergency Medical Technicians (EMTs) are stationed.  Plaintiff is one of several African Americans, and the only African American female out of the approximately 110 paramedics and EMTs at Station 49.

The parties did not provide a basic description of the Department's organizational structure, nor did they identify the supervisors who have had decision-making authority regarding issues affecting Plaintiff.  The court was able to glean the following incomplete picture through its review of the record.  Since 2010, Station 49 has been commanded by Assistant Deputy Chief in charge of Emergency Medical Services (EMS) Jeff Myers.  Myers reports to Deputy Chief of Operations Mark Gonzales, who in turn reports to SFFD Chief Joanne Hayes-White.  Myers states that as EMS Chief, he is not involved in recommending, carrying out or putting forward discipline for Station 49 members.  Plaintiff disputes this, but does not point to any contradicting evidence.  Hayes-White is the final decision maker for discipline of up to a ten-day suspension.  In the event that Hayes-White imposes such discipline, the member can appeal the decision to the San Francisco Fire Commission ("Fire Commission").  For discipline exceeding a ten-day suspension, including termination, the Fire Commission is the final decision maker.  In such instances, Hayes-White makes a recommendation to the Fire Commission, which holds a hearing to decide whether to impose the discipline.

The San Francisco Department of Human Resources ("DHR") handles charges of discrimination against the SFFD, including charges filed with the Equal Employment Opportunity Commission ("EEOC") and the California Department of Fair Employment and Housing ("DFEH").  SFFD Departmental Personnel Officer Jesusa Bushong receives and reviews Equal Employment Opportunity ("EEO") complaints and sends them to DHR.  DHR determines whether the complaint should be investigated and whether the incident should be referred to Hayes-White's office for possible disciplinary review.  Deputy Chief of Administration Guzman supervises Bushong.  He also oversees the Investigative Services Bureau (ISB), which currently includes Captain Andy Zanoff and Acting Captain Sheila Hunter.

**B. Key Incidents**

In her lawsuit, Plaintiff challenges a number of incidents which the court now describes in

United States District Court
Northern District of California

1   chronological order.

2               **July 2006: Complaints about Moulton**

3        In July 2006, Plaintiff's partner John Moulton, a white male paramedic, used the word

4   "nigger" while talking on the phone.  Plaintiff was offended and asked Moulton not to use the

5   word in her presence.  Plaintiff verbally complained about Moulton's treatment of patients and

6   participated in several investigations of Moulton's conduct towards patients.  SFFD terminated

7   Moulton in 2007 during his probationary period.  Plaintiff claims that after Moulton's termination,

8   his friend Scott Hellesto told people at Station 49 that he blamed Plaintiff for Moulton's

9   termination, and planned to "make her life miserable" for it.  Anderson Decl. ¶ 8.[1]

10              **October 2007: Anonymous Note**

11       On October 12, 2007, Plaintiff received an anonymous note in her locker that stated:

12   "What the fuck is wrong with you?  Why don't you understand about our lieutenants [sic] order us

13   not to park in the middle?  Why must you flaunt every rule? Why you think you're exempt?

14   You've got to fuck it up for everyone else don't you?"  Plaintiff understood the note to be a

15   complaint that she had parked a vehicle in an inappropriate location.

16       Plaintiff reported the incident to her supervisor, Lieutenant Norm Caba, and gave him the

17   note.  Caba forwarded it up the chain of command.  Assistant Deputy Chief Pete Howes conducted

18   an investigation in which he questioned women with access to the women's locker room and

19   reviewed Patient Care Reports from the same shift to try to match the handwriting on the note.

20   Howes was not able to determine who wrote the note, and no one admitted to writing it.

21   According to Plaintiff, SFFD could have determined who wrote the note if it had devoted more

22   resources to the investigation.  Plaintiff believed that the note was based on her race because she

23   was the only African American female at Station 49, and four of her coworkers were also parked

24   in the center aisle of the parking lot that evening.

25              **November 2007: Parking Reprimand**

26       On November 22, 2007, Caba wrote a General Form reprimanding Plaintiff for non-

27

28   [1]  Defendant objects to Hellesto's alleged statement as hearsay.  The objection is overruled, as the statement is not offered for the truth of the matter asserted.

compliance with parking practices.  Plaintiff submitted her own General Form to Hayes-White explaining her side of the story.  Caba's written reprimand was removed from her file and no disciplinary action was taken against her.  Defendant did not investigate Plaintiff's complaint to the Hayes-White that Caba had made a false report by reprimanding her.

**July 2009: Verbal Altercation with Hellesto**

On July 21, 2009, Plaintiff asked her partner, Scott Hellesto, if he needed anything.  He replied, "Nope, you just sit yourself right there," pointing to the driver's seat, "put on your bow tie and say 'yes sir, no sir' and drive."  Anderson Decl. ¶ 19.  Plaintiff believed that Hellesto's statement was inappropriate and racist.

On July 23, 2009, Plaintiff's partner had not arrived at Station 49 when her shift was about to begin.  Plaintiff went into the kitchen to talk to watch supervisor Lieutenant Paul O'Kane.  Hellesto was in the kitchen with two other paramedics.  Plaintiff asked O'Kane about the whereabouts of her partner.  Hellesto loudly commented that Plaintiff was snitching on her partner for being late.  Plaintiff left the kitchen, then returned and confronted Hellesto, resulting in a verbal altercation.  Hellesto called Plaintiff a "fucking manhole" and a "snitch bitch" and taunted her.  Hellesto acted as if he were going to hit her until he was held back.  O'Kane intervened and broke up the fight.  Both Hellesto and Plaintiff used expletives during the confrontation.

The SFFD investigated the incident.  Chief Robert Serrano interviewed Plaintiff.  She told him that she felt that Hellesto singled her out because she was a Black female.  Serrano referred Plaintiff's EEO complaint to Jesusa Bushong, as well as Linda Simon in DHR.  They determined that the incident should be investigated as a disciplinary matter, and dismissed the EEO complaint on July 29, 2009.

On December 18, 2009, the Department notified Plaintiff that it intended to impose a two-day suspension based on two violations: 1) improper, unprofessional and disrespectful conduct and 2) use of unacceptable language.  After a *Skelly* hearing,[2] and at the recommendation of

---

[2] When the Department notifies an employee of its intent to impose discipline, the employee is given an opportunity to request a *Skelly* hearing.  A *Skelly* hearing allows an employee to respond to the allegations prior to the imposition of any actual disciplinary action and to present evidence to refute or mitigate the findings and the discipline.  The name of the hearing references *Skelly v.*

United States District Court
Northern District of California

1   Hearing Officer, then-Deputy Chief of Administration Gary Massetani, Hayes-White reduced the

2   discipline and imposed a one-day suspension on March 5, 2010, because Plaintiff had not been the

3   initial aggressor.  Plaintiff did not appeal her one-day suspension.  Hellesto received a two-day

4   suspension because he had initiated the conflict.

### July 2009: Early Departure from Shift

6   On July 24, 2009 Plaintiff and her partner returned to Station 49, restocked and cleaned the

7   ambulance, and then left approximately fifteen minutes before their shift ended.  Plaintiff states

8   that it is common daily practice at Station 49 for crews to leave prior to the shift end if they have

9   completed their duties.  Lieutenant O'Kane called Plaintiff and asked why she left early.  Plaintiff

10  asserts that O'Kane initiated disciplinary action against her, but does not offer evidence of any

11  action taken.

### September 2009: Incident at Riordan High School

13  On September 11, 2009, Plaintiff and her partner, Brian Washington, responded to a

14  medical call at Riordan High School where a fifteen year-old football player had dislocated his

15  shoulder during a game.  When they reached the scene, the patient's father asked what had taken

16  the ambulance so long to arrive.  As Plaintiff treated the patient, the father became increasingly

17  upset and tension escalated.  Plaintiff cut off the patient's football jersey, exposing his upper body.

18  Noticing that some onlookers were taking out cameras, Plaintiff told the observers to put the

19  cameras away.  The father responded that one of the observers was the patient's mother, and that

20  she could take pictures.  Plaintiff stated that they would take the patient to San Francisco General

21  Hospital; the father disagreed and wanted him taken to UCSF.

22  After removing the patient's jersey and football padding, Plaintiff loaded him into the

23  ambulance and started to splint his shoulder.  Plaintiff states that the father became more and more

24  agitated as she treated the patient.  Plaintiff states that she felt unsafe, and that the father became

25  irate and began screaming and yelling and shaking the ambulance.  The patient began to cry.  In

---

27  *State Pers. Bd.*, 15 Cal. 3d 194 (1975), in which the California Supreme Court held that due
    process required pre-removal safeguards for public employees, including notice of the proposed
28  action, the reasons, and the copy of the charges or materials the action is based on, and the right to
    respond, either orally or in writing, to the authority imposing the discipline.

response, Plaintiff locked the ambulance door.  Washington was outside the ambulance when Plaintiff locked the door.  Defendant claims that locking the door escalated, rather than diffused, the father's anger.

Plaintiff called for backup, and the Department dispatched a fire engine.  While Plaintiff was in the locked ambulance, Washington spoke with the father, who continued to yell.  One of the responding firefighters told Plaintiff that the father did not want Plaintiff touching his son, so she stopped treating the patient.  According to Plaintiff, she asked Washington to take over the call and to continue treatment, but he said that he did not want to be involved.  Washington disputed this, as described below.  Approximately an hour after the ambulance had arrived, the father called 911 and complained about the handling of the call.  The father complained that the paramedics were taking too long to treat his son and that they had not yet transported him to the hospital.

Plaintiff filed a General Form documenting the incident, and complained to Captain Ali about Washington's lack of support.  In January 2010, Deputy Chief Patrick Gardner commenced an investigation into the incident.  The investigator, Captain Andy Zanoff, interviewed the mother, father, Washington, and other witnesses.[3]  According to Zanoff's report, Washington stated that the father started banging on the side of the ambulance after Plaintiff locked the ambulance door. Washington stated that he stood on the bumper and tried to speak to Plaintiff through the window to tell her to unlock the door, and that the patient's mother also tried to speak to Plaintiff through the window.  Washington also stated that Plaintiff ignored him the entire time, did not respond to his treatment suggestions.  He reported that when he asked Plaintiff if she wanted him to take over the call, she ignored him.  He stated that Plaintiff never asked him to take over the call for her.

---

[3] Plaintiff objects to Captain Zanoff's investigation because the only information provided to the SFFD command staff and to Plaintiff regarding the parents' statements was secondhand hearsay testimony from Zanoff.  The objection is overruled.  Defendant introduces these as investigatory statements to explain the circumstances surrounding SFFD's decision to impose disciplinary action.  *See United States v. Payne*, 944 F.2d 1458, 1472 (9th Cir. 1991) (investigation statements are non-hearsay where they are introduced "to explain the circumstances under which" an event occurred); *Bennett v. Permanente*, No. 14-CV-2676 YGR, 2015 WL 6952697, at *1 n.1 (N.D. Cal. Nov. 10, 2015) (rejecting hearsay objections to  statements that employer learned in the course of investigating plaintiff's job performance because they were not offered for the truth of the matters asserted, but as investigatory states to explain the circumstances surrounding its ultimate decision to terminate plaintiff's employment).

United States District Court
Northern District of California

Zanoff found that Plaintiff's conduct violated several departmental rules and regulations. Citing to the Zanoff declaration, Plaintiff claims that Zanoff recommended that she be disciplined for her conduct.  However, the Zanoff declaration does not state that he recommended discipline; to the contrary, in the deposition testimony attached to his declaration, he testified that he did not dictate or recommend discipline, and his investigation report has no disciplinary recommendation.

Hayes-White reviewed the investigative report and in February 2010, notified Plaintiff of her intention to impose a four-day suspension for violating the following Department Rules and Regulations: 1) Section 3907-Safety Rules; 2) Section 3909- False Reports;  3) Section 3918— Altercation; 4) Section 3919— Proper Behavior; 5) Section 3921— Inattention to Duty; 6) Section 3923— Acts Detrimental to the Welfare of the Department; 7) San Francisco Emergency Medical Services Agency Extremity Trauma— Protocol P-033; and 8) SFEMSA Pain Control— Protocol P-019.

On April 19, 2010, Hearing Officer Massetani held a *Skelly* hearing.  He recommended withdrawing the first two charges.  He concurred with the proposed four-day suspension of Plaintiff.  He also recommended that Washington be coached on the Patient Care Report review procedures.

On May 11, 2010, Hayes-White notified Plaintiff that she intended to impose a four-day suspension for the six remaining charges.  Hayes-White believed that Plaintiff's action of locking the father out of the ambulance escalated the confrontation between her and the patient's father, and was not appropriate under the circumstances.  Hayes-White did not find credible Plaintiff's claim that she was in physical danger, as the incident occurred during the afternoon at a crowded high school football game.

Plaintiff appealed her suspension to the Fire Commission.  The Fire Commission held a hearing on September 27, 2010, where it heard testimony and reviewed other evidence.  Fire Commissioners Nakajo, Evans, Lau, and Hardeman unanimously sustained three of the six charges against Plaintiff: 1) Section 3918—Altercation; 2) Section 3919—Proper Behavior; and 3) Section 3923—Acts Detrimental to the Welfare of the Department.  The Commission voted three to one to affirm Hayes-White's decision to impose a four-day suspension.

### Early 2011: Request for Shift Change

In early 2011 Plaintiff requested to change from night to day shift for personal reasons.  On April 11, 2011, Plaintiff's request was denied.  Plaintiff claims that Chief Myers denied her request.  Defendant states that Chief Myers did not make the decision, but instead referred Plaintiff's request to the Assignment Office for review and decision.

According to Plaintiff, shortly after she submitted her request, an unnamed white female with less seniority was given the earlier shift.   Defendant disputes this.

### April 2011: Comment by Dr. Sporer

On April 15, 2011, Plaintiff was at San Francisco General Hospital.  Dr. Carl Sporer, who at the time was SFFD's EMS Medical Director, made an offensive racist comment to her.  Dr. Sporer mistook Plaintiff for another African American paramedic, and when he realized his mistake, he said, "I get you dark girls mixed up."  Dr. Sporer did not make any other offensive comments to Plaintiff.  Plaintiff reported the comment to Bushong, who reported the comment to DHR.   Because Dr. Sporer was employed by UCSF and not CCSF, DHR referred the matter to the UCSF human resources department.

Bushong also consulted with DHR regarding the substance of Plaintiff's complaint.  Bushong and DHR concluded that because Dr. Sporer's comment was a one-time occurrence, it did not rise to the level of workplace hostile environment harassment or disparate treatment.  Bushong sent Plaintiff a letter explaining this finding on April 18, 2011.

### July 2011: Captain Calls Plaintiff Regarding Missing Laptop

On July 6, 2011, Captain Raymond Crawford called Plaintiff after she finished her shift and told her that the crew could not find the laptop that was supposed to be in her ambulance.  Crawford ordered her to return to work and prepare a General Form, which she did.  After turning in the General Form, Plaintiff was told that the crew had found the laptop in the ambulance.

### July 2011: First EEOC Complaint

On July 28, 2011, Plaintiff filed a complaint of race and gender discrimination and retaliation with the U.S. Equal Employment Opportunity Commission (EEOC).  Plaintiff's EEOC charge included her discipline resulting from the 2009 Riordan High School incident, Dr. Sporer's

comment, her altercation with Hellesto, the anonymous note left in her locker, and the incident in which her supervisor asked her to locate the laptop.  Hayes-White was notified of Plaintiff's complaint on about August 4, 2011.  SFFD submitted a response to the EEOC Charge on September 30, 2011.

### August 2011: Coaching By Captains Salan and Filiss

In August 2011, Supervising Captains Fred Salan and Elizabeth Filiss coached[4] Plaintiff about two separate incidents.  On August 18, 2011, Plaintiff asked Salan if she could partner with Michael Fields, another paramedic, and said, "I don't know if anything is going on, I don't know if they (Fields and his current partner) can work together, I don't know."  Anderson Decl. ¶ 37.  Salan took Plaintiff's comment to mean that Fields and his partner might not be able to work together.  Salan talked to Fields and his partner and found that there was no reason that they could not work together.  He then consulted his supervisor, Myers, who instructed him to talk to Plaintiff.  During Plaintiff's counseling session, Salan acknowledged that there may have been a misunderstanding about Plaintiff's comments.  Plaintiff filed a complaint with Hayes-White about the Salan counseling, claiming that she was being singled out for discriminatory and retaliatory treatment.  Hayes-White chose not to investigate the matter and determined that there were no rule violations.

On August 23, 2011, Plaintiff left her shift several minutes early.  Rescue Captain Elizabeth Filiss called Plaintiff and counseled her for leaving her shift early and leaving her partner to clean up the ambulance.  Plaintiff explained that she had cleaned the ambulance before she left.  Filiss informed Plaintiff that there was other work to be done and that Plaintiff should not have left early.  Plaintiff filed a complaint with Hayes-White claiming that Filiss's counseling was unjust, that she was the victim of discrimination and retaliation, and that Defendant should have investigated what Plaintiff considered to be aggressive and unnecessary counselings.

There is no indication that either of these counseling sessions was documented in Plaintiff's employment record.

---

[4] The parties use the terms "coaching" and "counseling" interchangeably.

United States District Court
Northern District of California

**October 2011: EMT Overtime Shift**

Plaintiff worked an EMT overtime shift.  Lieutenant Neuneker of the Assignment Office initially was going to pay Plaintiff for the shift at the EMT rate instead of the correct paramedic rate.  Plaintiff complained and was then paid overtime for the shift at the paramedic rate.

**March 2012: Second EEOC Complaint**

On March 27, 2012, Plaintiff filed a second EEOC charge.  It claimed race and gender discrimination and retaliation based on the counseling she received in August 2011 from Filiss and Salan, and an investigation of alleged misconduct regarding Plaintiff's demeanor toward a patient in custody at the police station.[5]  SFFD was notified of the second complaint on March 30, 2012, Hayes-White was notified of the charge on April 3, 2012, and the Department submitted a response on May 23, 2012.

**September 2012: Accident in Station 49 Parking Lot**

On September 24, 2012, Plaintiff was driving an ambulance and hit a parked car in the Station 49 parking lot.  Plaintiff did not report the incident because there was no damage to the parked car.  A Station 49 employee submitted an anonymous General Form to the Deputy Chief of Operations documenting the incident.

On February 1, 2013, following an investigation and a *Skelly* hearing, Hayes-White imposed a two-day suspension for violation of the Department's Vehicle Operations Manual Accident Procedures.  Plaintiff appealed the suspension to the Fire Commission, which held a hearing.  On May 31, 2013, Fire Commissioners Hardeman, Evans, Covington, and Carmignani unanimously found Plaintiff guilty of violating the Department Rules and Regulations, but reduced the two-day suspension to a written reprimand.

**October 2012: Plaintiff Misses WDO Shift**

On October 19, 2012, Plaintiff did not report for a mandatory overtime shift or "WDO".  Under Department policy, the Assignment Office posts a list of paramedics hired for a WDO on the day before the scheduled WDO.  It is the paramedic's duty to check the list to see whether the paramedic was scheduled to work a WDO the next day. On October 18, 2012, the Assignment

---

[5] The parties' briefing does not make any reference to this investigation.

Office posted the WDO list for October 19, 2012 around 12:10 pm, which was before the end of Anderson's shift, but after the time that the list was normally posted. Plaintiff checked the list earlier in the day and did not see her name. She did not check the list at the end of her shift.

Plaintiff did not show up to work her WDO on October 19, 2012. The captain on duty called Plaintiff. She informed him that she was not aware that she had been scheduled for a WDO but that she could come in. At that point, Plaintiff was already more than thirty minutes late for her shift, and was therefore considered AWOL. The Department imposed a one-day suspension, which Plaintiff served on October 19, 2012, the day she had been assigned to work the WDO.

### December 2012: Captain Schorr Reviews Plaintiff's Patient Care Reports

Captain Justin Schorr oversaw the paramedics' Patient Care Reports. Plaintiff claims that in December 2012, Schorr began to review all of Plaintiff's charts, looking for mistakes and critiquing her for minor ones. Defendant contends that Schorr's job was to review patient care reports for quality control. Defendant asserts that Schorr critiqued other paramedics regarding deficient patient care reports, and did not single out Plaintiff. There is no evidence that Schorr's critiques were documented in Plaintiff's employment file.

### July 2013: Plaintiff's Car is Vandalized in the Station 49 Parking Lot

On July 30, 2013, Plaintiff parked her car overnight in the Station 49 parking lot, which is locked and enclosed by a fence topped with barbed wire. The next day, Plaintiff noticed a pool of fluid under her car that appeared to be coolant. Plaintiff's car overheated and she had her car towed to her mechanic for repairs. Plaintiff filed a General Form reporting that her car had been vandalized. Plaintiff reported that her mechanic told her that there were two holes in her radiator and that the damage appeared intentional. Zanoff investigated and found insufficient evidence to charge anyone with disciplinary action. Plaintiff claims that Zanoff's investigation was inadequate. Plaintiff filed a stress claim after the incident stating that she could no longer work at Station 49 because she feared for her safety. SFFD placed her on temporary modified duty.

### 2013-2015 Fire Academies

#### 1.  115th Fire Academy

Beginning in 2012, SFFD offered Station 49 paramedics the opportunity to cross train as

United States District Court
Northern District of California

United States District Court
Northern District of California

firefighters.  Starting with the 114th Fire Academy class, SFFD reserved a certain number of spots in the Academy for Station 49 members.  Initially, SFFD selected members to participate in the Academy based on a combination of their seniority and their score on the eligible list for the H-2 firefighter position.  Later, members became eligible based solely on seniority.

Based on her seniority, Plaintiff became eligible to participate in the 115th Academy class which took place in 2013.  Hayes-White did not select Plaintiff.  Plaintiff claims that this was discriminatory and retaliatory.  Defendant claims that Hayes-White did not select Plaintiff because of her policy to consider a candidate's disciplinary record over the last one to three years.

### 2.  117th Fire Academy

In August 2014, Plaintiff was one of fifteen members of Station 49 selected to participate in the 117th Fire Academy.  The Fire Academy is a seventeen-week training on the basic skills required to be a firefighter.  Station 49 members who are already EMTs do not participate in the first two weeks, which cover EMT skills.  The next fifteen weeks cover fire suppression skills. Recruits learn how to perform exercises involving fire hoses, knots, hydrants, different size ladders, and other equipment.  In the 117th class, thirteen instructors trained recruits in fire suppression skills and conducted weekly skills tests.  Instructors used evaluation sheets listing each task that needed to be performed for a given test, and marked down any task that the recruit performed incorrectly.  Recruits who did not perform well on the tests received deficiency points based on their test scores.  Station 49 members who received more than sixteen deficiency points in fifteen weeks were recommended for release from the Academy.  Recruits who participated in all seventeen weeks could accumulate up to twenty deficiencies, but this included up to four deficiencies during the two-week EMT training.  Plaintiff failed a number of tests, received eighteen deficiency points, and was dismissed from the 117th Fire Academy.

### 3.  118th Fire Academy

In August 2015, Plaintiff and another paramedic who had also failed out of the 117th Fire Academy were offered positions in the 118th Fire Academy Class.  Plaintiff was dismissed from the 118th Fire Academy on November 10, 2015.

## II.    PROCEDURAL HISTORY

Plaintiff filed an EEOC charge on July 28, 2011, which was cross-filed with the DFEH. Plaintiff filed a second related charge on March 27, 2012.  The EEOC issued a Right to Sue Notice on September 6, 2013.  Plaintiff filed her initial complaint on December 2, 2013.  [Docket No. 1.]  On January 13, 2015, Plaintiff filed an amended complaint to add allegations related to her release from the Fire Academy.  First Amended Complaint ("FAC") [Docket No. 30.]  On December 21, 2015, Plaintiff filed a motion for leave to file a Second Amended Complaint to add allegations about her dismissal from the 118th Fire Academy.  [Docket No. 77-1.]

## III.    LEGAL STANDARD

A court shall grant summary judgment "if . . . there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The burden of establishing the absence of a genuine issue of material fact lies with the moving party, *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986), and the court must view the evidence in the light most favorable to the non-movant.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  A genuine factual issue exists if, taking into account the burdens of production and proof that would be required at trial, sufficient evidence favors the non-movant such that a reasonable jury could return a verdict in that party's favor.  *Id.* at 248.  The court may not weigh the evidence, assess the credibility of witnesses, or resolve issues of fact.  *See id.* at 249.

To defeat summary judgment once the moving part has met its burden, the nonmoving party may not simply rely on the pleadings, but must produce significant probative evidence, by affidavit or as otherwise provided by Federal Rule of Civil Procedure 56, showing that a genuine issue of material fact exists.  *TW Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).  In other words, there must exist more than "a scintilla of evidence" to support the non-moving party's claims.  *Anderson*, 477 U.S. at 252.  Conclusory statements without factual support are insufficient to defeat a motion for summary judgment.  *Surrell v. Cal. Water Serv. Co.,* 518 F.3d 1097, 1103 (9th Cir. 2008).  Similarly, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts" when ruling on the motion.

United States District Court
Northern District of California

1   *Scott v. Harris*, 127 S. Ct. 1769, 1776 (2007).

2        On an issue where the nonmoving party will bear the burden of proof at trial, the moving

3   party can prevail merely by pointing out to the district court that there is an absence of evidence to

4   support the nonmoving party's case. *Celotex*, 477 U.S. at 324-25; *Soremekun v. Thrifty Payless,*

5   *Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). If the moving party meets its initial burden, the opposing

6   party must then set out specific facts showing a genuine issue for trial in order to defeat the

7   motion. *Anderson*, 477 U.S. at 250; *Soremekun*, 509 F.3d at 984; *see* Fed. R. Civ. P. 56(c), (e).

8   The opposing party's evidence must be more than "merely colorable" and must be "significantly

9   probative." *Anderson*, 477 U.S. at 249-50. Further, the opposing party may not rest upon mere

10  allegations or denials of the adverse party's evidence, but instead must produce admissible

11  evidence showing there is a genuine dispute of material fact for trial. *Nissan Fire & Marine Ins.*

12  *Co. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102-03 (9th Cir. 2000). Disputes over irrelevant or

13  unnecessary facts will not preclude a grant of summary judgment. *T.W. Elec. Serv., Inc. v. Pac.*

14  *Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

15        In determining whether to grant or deny summary judgment, it is not a court's task "to

16  scour the record in search of a genuine issue of triable fact." *Blount v. Morgan Stanley Smith*

17  *Barney LLC*, 982 F. Supp. 2d 1077, 1080 (N.D. Cal. 2013) *aff'd*, No. 13-17319, 2015 WL

18  9259058 (9th Cir. Dec. 18, 2015)(citing *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996)).

19  Rather, a court is entitled to rely on the nonmoving party to "identify with reasonable particularity

20  the evidence that precludes summary judgment." *Id.*

21                          **IV.    DISCUSSION**

22        Defendant moves for summary judgment on all of Plaintiff's claims.[6] Defendant argues

23  that: 1) many of the incidents are outside the statutory limitations period; 2) Plaintiff fails to

24  establish a prima facie case of discrimination; 3) even if Plaintiff were to establish a prima facie

25  _____

26  [6] Defendant moves for summary judgment on Plaintiff's claim regarding a November 2011
    mediation session conducted by Captain Mike Whooley regarding a conflict between Plaintiff and

27  a paramedic partner. MSJ at 9-10. Because Plaintiff did not respond to these arguments in her
    opposition, the court deems this claim abandoned. *See, e.g., Shakur v. Schriro*, 514 F.3d 878, 892

28  (9th Cir. 2008) (plaintiff "abandoned ... claims by not raising them in opposition to [defendant's]
    motion for summary judgment"); *Blount*, 982 F. Supp. 2d at 1088 n.3 (same).

*United States District Court*
*Northern District of California*

14

case of discrimination, she has not created a genuine issue of material fact to show that the Department's proffered legitimate, nondiscriminatory reasons are pretextual; 4) Plaintiff cannot establish a prima facie case of retaliation; and 5) even if Plaintiff were to establish a prima facie retaliation case, she cannot show that the Department's proffered legitimate, nondiscriminatory reasons are pretextual.  Defendant also objects to some of Plaintiff's evidence as improper under the Federal Rules of Evidence.

### A.  Statute of Limitations

Title VII requires a plaintiff to timely file an administrative charge with the EEOC or a state agency before instituting a lawsuit.  *B.K.B. v. Maui Police Dep't,* 276 F.3d 1091, 1099 (9th Cir. 2002), *as amended* (Feb. 20, 2002).  Under Title VII, a plaintiff must file an EEOC charge within 300 days after the alleged unlawful employment practice occurred.  42 U.S.C. § 2000e-5(e)(1).  Under FEHA, a plaintiff must file a charge with the DFEH within one year after the unlawful practice occurred.  Cal. Govt. Code § 12960(d).

Since Plaintiff filed her administrative complaint with the EEOC and DFEH on July 28, 2011, the period within the statute of limitations begins on July 28, 2010 for FEHA claims, and on September 31, 2010 for Title VII claims.  Defendant argues that Plaintiff is time-barred from bringing claims based on incidents outside of these time periods.  These incidents include: 1) Moulton's use of the word "nigger" in Plaintiff's presence in 2006; 2) the anonymous note left in Plaintiff's locker in October 2007; 3) the November 2007 reprimand regarding parking practices; 4) the July 2009 reprimand for leaving her shift early; and 5) the one-day suspension for the verbal altercation with Hellesto in March 2010.

### B.  The Continuing Violation Doctrine

The continuing violation doctrine allows a court, in some instances, to consider alleged unlawful behavior that would otherwise be time-barred.  *Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 122 (2002).  Plaintiff relies on unsupported conclusory statements to argue for application of the continuing violation doctrine to her otherwise untimely claims.  Opp. at 16-17.

### 1. Application to Title VII Discrimination and Retaliation Claims

In *National Railroad Passenger Corp.,* the Supreme Court held that the continuing violation doctrine applies to Title VII claims of hostile work environment, but not to claims of discrimination or retaliation.  Discriminatory or retaliatory acts under Title VII are "discrete acts" that start a new clock for filing administrative charges alleging that act, and are not actionable unless they occur within the statutory period.  *Nat'l R.R. Passenger Corp.*, 536 U.S. at 113-14.  For this reason, only the acts within the statute of limitations will be considered for Plaintiff's Title VII discrimination and retaliation claims.

### 2. Application to FEHA Discrimination and Retaliation Claims

The continuing violation doctrine may apply to FEHA discrimination and retaliation claims where a plaintiff establishes a continuing course of unlawful conduct.  For purposes of state law claims under FEHA, the California Supreme Court rejected *National Railroad Passenger Corp.'s* distinction between discrimination and retaliation on the one hand, and hostile work environment claims on the other. *Yanowitz v. L'Oreal USA, Inc.,* 36 Cal.4th 1028, 1057–59 (2005); *Leland v. City & Cty. of S.F.*, 576 F. Supp. 2d 1079, 1093 (N.D. Cal. 2008) (citing *Yanowitz,* 36 Cal.4th 1028, 1057–59) ("In *Yanowitz,* the California Supreme Court held that the continuing violations doctrine may be applicable not only to hostile work environment claims, but also to discrimination and retaliation claims where a plaintiff alleges a continuing course of unlawful conduct.").

To establish a "continuing course of conduct" a plaintiff must show that the employer's actions were "(1) sufficiently similar in kind ...; (2) have occurred with reasonable frequency; and (3) have not acquired a degree of permanence."  *Yanowitz*, 36 Cal. 4th at 1059; *Richards v. CH2M Hill, Inc.,* 26 Cal.4th 798, 811–12 (2001).  "[P]ermanence properly should be understood to mean that an employer's statements and actions make clear to a reasonable employee that any further efforts at informal conciliation to ... end harassment will be futile."  *Yanowitz*, 36 Cal. 4th at 1059 n. 19.  Thus, continuing violation may exist where there is a company-wide policy or practice of discrimination, or a series of related acts against a single individual.  *Morgan v. Regents of the Univ. of Cal.*, 88 Cal. App. 4th 52, 64 (2000).

United States District Court
Northern District of California

1   The continuing violation doctrine is justified on the grounds that: "[a] rule that would force

2   employees to bring actions for 'discrete acts' of retaliation that have not yet become ripe for

3   adjudication, and that the employee may not yet recognize as part of a pattern of retaliation, is

4   fundamentally incompatible with the twin policy goals of encouraging informal resolution of

5   disputes and avoiding premature lawsuits." *Yanowitz*, 36 Cal. 4th at 1059.

6   In *Yanowitz*, the court found that the plaintiff's retaliation claims were not time-barred

7   where the plaintiff, a regional sales manager, refused to fire a female sales associate in 1997 who

8   the general manager deemed was not attractive enough. *Id.* Beginning in April 1998, the general

9   manager began to solicit negative comments about the plaintiff from her subordinates, frequently

10  criticized her management style, and refused to allow her to answer these charges during a July

11  1998 meeting, ultimately resulting in her departure. *Id.* Although the plaintiff did not file her

12  complaint with DFEH until June 1999, the court found that the continuing violation doctrine could

13  apply to impose liability for actions that occurred prior to June 1998 because the plaintiff alleged a

14  course of conduct in which the defendant solicited or fabricated negative information, and then

15  used this information to intimidate, disempower, and punish the plaintiff. *Id.* The court found that

16  a reasonable trier of fact could find that the plaintiff "was not on notice that further conciliatory

17  efforts would be futile, until her final attempts to meet with company representatives to discuss the

18  criticism directed at her were finally rebuffed." *Id.*

19  In contrast, the court in *Morgan* found that the continuing violation doctrine did not apply

20  to the plaintiff's retaliation claim where the plaintiff alleged that he was laid off after filing a

21  grievance claiming racial discrimination. *Morgan*, 88 Cal. App. 4th at 52. After being laid off, the

22  plaintiff applied for thirty-two jobs with the University between 1995 and 1996, but was not hired

23  despite having preferential rehire rights for employment on the campus. *Id.* at 58. The plaintiff

24  filed a DFEH complaint in April 1997, alleging that he was denied employment and rehire rights

25  in retaliation for filing a grievance. *Id.* at 63. The court found that the continuing violation

26  doctrine did not apply because the unlawful acts were insufficiently similar in kind, as the plaintiff

27  had not alleged a University-wide policy of discrimination or that the individual hiring decisions

28  were related. *Id.* at 65. Instead, the hiring decisions were isolated employment decisions "made

1    by different decision makers in unrelated departments of the University regarding positions with

2    varying job requirements." *Id.* The court found that "each time appellant was informed he was

3    not being hired for a position to which he had applied, he was, or should have been, aware this

4    action might be contrary to his preferential rehire rights" and each rejection "had the degree of

5    permanence which should trigger an employee's awareness of and duty to assert his ... rights." *Id.*

6    at 66-67.

7         Here, Plaintiff recites the three factors to establish a "continuing course of conduct" for

8    purposes of FEHA, but does not meaningfully discuss them.  Defendant moved for summary

9    judgment on all claims prior to the statutory periods.  Plaintiff did not address, and therefore is

10   deemed to have abandoned her continuing violation argument with respect to the July 2006

11   Moulton issue, the October 2007 locker note, the November 2007 parking reprimand, and the July

12   2009 early departure.  *See* Opp. at 16-17 (briefing on continuing violations doctrine; no mention of

13   these incidents).  At the hearing, Plaintiff's only argument on the continuing violation doctrine

14   amounted to an attempt to pull the otherwise untimely July 2009 altercation with Hellesto into the

15   actionable period, based solely on its temporal proximity to the timely Riordan High School

16   medical call events.[7]  Plaintiff fought with Hellesto on July 23, 2009 and received a one-day

17   suspension on March 5, 2010.  Plaintiff responded to the medical call at Riordan High School on

18   September 11, 2009.  Hayes-White imposed a four-day suspension for the Riordan High incident

19   in February 2010, which the Fire Commission upheld on October 14, 2010.

20        Plaintiff has not established a continuing violation.  The Hellesto and Riordan High School

21   incidents are not "sufficiently similar in kind."  The former involved a profanity-laced verbal

22   altercation with a coworker; the latter involved a medical call where, among other things, Plaintiff

23   locked herself and the minor patient in the ambulance, and locked the patient's father out of the

24   ambulance, preventing him from communicating with his son.  As to the "reasonable frequency"

25   _____

26   [7] Although the underlying incident at Riordan High School occurred on September 11, 2009, the
     final decision regarding imposition of discipline for that incident did not occur until October 14,
27   2010, when the Fire Commission upheld Plaintiff's four-day suspension.  Defendant does not
     dispute, and therefore concedes, that Plaintiff's FEHA claim regarding the imposition of discipline
28   for the Riordan High School incident is not time barred.

United States District Court
Northern District of California

prong, Plaintiff merely points to the temporal proximity between the two incidents.  This is insufficient.  Finally, the imposition of a one-day suspension for the Hellesto incident "had the degree of permanence which should trigger an employee's awareness of and duty to assert [her] ... rights."  *Morgan,* 88 Cal. App. 4th at 66.

In sum, in analyzing Plaintiff's FEHA claims, the court will only consider the incidents that occurred after July 28, 2010 as actionable.  However, although time-barred acts may not form the basis for liability, they may nevertheless be considered as background evidence in support of a timely claim.  *Nat'l R.R. Passenger Corp.*, 536 U.S. at 113.

### C. Plaintiff's Race Discrimination Claims

Plaintiff's first and third claims are for race discrimination under Title VII and FEHA. Plaintiff's FAC and briefing did not specify which incidents she challenges as discriminatory.  At the hearing, Plaintiff identified the following incidents as discriminatory: 1) discipline for the September 2009 incident as Riordan High School; 2) the 2011 denial of her request for a shift change; 3) discipline for the September 2012 accident in the Station 49 parking lot; 4) discipline for the October 2012 missed overtime shift; 5) failure to be selected for the 115th Fire Academy; and 6) dismissal from the 117th Fire Academy.

At the hearing, Plaintiff conceded that the other incidents in her FAC and briefing do not constitute actionable discrimination because they did not involve a qualifying adverse employment action.

### 1.  Legal Framework for Discrimination Claims

The court need only assess Plaintiff's claims under federal law because Title VII and FEHA operate under the same guiding principles.  *Brooks v. City of San Mateo*, 229 F.3d 917, 923 (9th Cir. 2000); *Earl v. Nielsen Media Research, Inc.,* 658 F.3d 1108, 1112 (9th Cir. 2011) (California courts use the familiar *McDonnell Douglas* burden-shifting test when analyzing disparate treatment claims under FEHA); *Guz v. Bechtel Nat'l, Inc.,* 24 Cal.4th 317, 354 (2000).

To establish a prima facie case of disparate treatment, a plaintiff must "offer evidence that 'give[s] rise to an inference of unlawful discrimination,' either through the framework set forth in *McDonnell Douglas Corp. v. Green,*[411 U.S. 792 (1973)], or with direct or circumstantial

United States District Court
Northern District of California

19

1    evidence of discriminatory intent." *Vasquez v. Cty. of Los Angeles*, 349 F.3d 634, 640 (9th Cir.

2    2003), *as amended* (Jan. 2, 2004).

3         Plaintiff admits that she has no direct evidence of discriminatory intent and relies on the

4    *McDonnell Douglas* burden shifting framework to oppose summary judgment on her claims for

5    race discrimination.  Under that framework, the burden of production first falls on the plaintiff to

6    make out a prima facie case of race discrimination.  She may do so by showing that she: (1)

7    belongs to a protected class, (2) was qualified for the position or was performing the job

8    satisfactorily, (3) was subjected to an adverse employment action, and (4) similarly situated

9    individuals outside of her protected class were treated more favorably.  *Noyes v. Kelly Servs.*, 488

10   F.3d 1163, 1168 (9th Cir. 2007); *Hanson v. Lucky Stores Inc.*, 74 Cal. App. 4th 215, 224 (1999).

11        If the plaintiff establishes a *prima facie* case of discrimination, the burden of production

12   shifts to the employer to present evidence sufficient to permit the factfinder to conclude that the

13   employer had a legitimate, nondiscriminatory reason for the adverse employment action.  *St.*

14   *Mary's Honor Center v. Hicks*, 509 U.S. 502, 506-07 (1993).

15        If the employer does so, the burden shifts back to plaintiff to demonstrate that the

16   employer's articulated reason is a pretext for unlawful discrimination.  A plaintiff may

17   demonstrate pretext in either of two ways: (1) directly, by showing that unlawful discrimination

18   more likely than not motivated the employer; or (2) indirectly, by showing that the employer's

19   proffered explanation is unworthy of credence because it is internally inconsistent or otherwise not

20   believable.  *Earl*, 658 F.3d at 1112-13.

21        The ultimate burden of persuasion on the issue of discrimination remains with the

22   plaintiff.  *St. Mary's Honor Center*, 509 U.S. at 518).  "If the employer presents admissible

23   evidence either that one or more of plaintiff's *prima facie* elements is lacking, or that the adverse

24   employment action was based on legitimate, nondiscriminatory factors, the employer will be

25   entitled to summary judgment unless the plaintiff produces admissible evidence which raises a

26   triable issue of fact material to the defendant's showing."  *Caldwell v. Paramount Unified School*

27   *Dist.*, 41 Cal.App.4th 189, 203 (1995); *see also Earl*, 658 F.3d at 1113 (Where evidence of pretext

28   is circumstantial, rather than direct, the plaintiff must produce "specific" and "substantial" facts to

United States District Court
Northern District of California

1    create a triable issue of pretext.  This standard is "tempered" by the Ninth Circuit's observation

2    that a plaintiff's burden to raise a triable issue of pretext is "hardly an onerous one.").

3          For discrimination claims, an adverse employment action "is one that 'materially affect[s]

4    the compensation, terms, conditions, or privileges" of employment.  *Davis v. Team Elec. Co.,* 520

5    F.3d 1080, 1089 (9th Cir. 2008) (quoting *Chuang v. Univ. of Cal. Davis, Bd. of Trs.,* 225 F.3d

6    1115, 1126 (9th Cir. 2000)); *Horsford v. Bd. of Trs. of Cal. State Univ.*, 132 Cal. App. 4th 359,

7    373 (2005) (changes in terms and conditions of employment must be both substantial and

8    detrimental to be actionable; adverse treatment that is reasonably likely to impair a reasonable

9    employee's job performance or prospects for advancement or promotion falls within the reach of

10   the antidiscrimination provisions of FEHA).

11         It is undisputed that Plaintiff is African American, and is a member of a protected racial

12   class.  Defendant argues that: 1) Plaintiff cannot establish other elements of her prima facie case;

13   2) Defendant had legitimate, nondiscriminatory reasons for each of the challenged employment

14   actions; and 3) Plaintiff has failed to put forth evidence of pretext.

### 2.   Incidents Challenged as Discriminatory

#### a.   September 2009 Riordan High School Incident

17         Plaintiff claims that the discipline she received for her actions in treating a Riordan High

18   School football player was the result of race discrimination.  The incident is described above in the

19   factual recitation.  In early 2010,[8] CD2 Patrick Gardner directed Zanoff to investigate the incident.

20   Zanoff reviewed the General Forms submitted by Plaintiff, her partner Brian Washington, and

21   Simon Pang.  Zanoff also reviewed the 911 call recording of the incident, and interviewed the

22   patient's father, Paramedic Captain Brett Powell, Simon Pang, Firefighter Nancy Galvin,

23   Washington, and Plaintiff.

24         The record does not establish who originally recommended a four-day suspension.  Hayes-

25   White provided notice of the discipline to Plaintiff, who challenged the suspension. In early 2010

---

[8] Plaintiff erroneously states that the investigation began in January 2012.  Opp. at 7.  The record shows that the investigation began in early 2010.

United States District Court
Northern District of California

the Department held a *Skelly* hearing at Plaintiff's request.  Hearing Officer Massetani recommended dropping two of the charges against Plaintiff and agreed with the decision to impose a four-day suspension.  Hayes-White concurred and adopted Massetani's report.

Plaintiff then appealed the discipline to the Fire Commission.  On September 27, 2010, the Fire Commission held a hearing and heard testimony from Hayes-White, Plaintiff, and other witnesses.  Fire Commissioners Nakajo, Evans, Lau, and Hardeman unanimously sustained three of the six charges against Plaintiff: 1) Section 3918—Altercation; 2) Section 3919—Proper Behavior; and 3) Section 3923—Acts Detrimental to the Welfare of the Department.  The Commission affirmed Hayes-White's decision to impose a four-day suspension by a three to one vote.

Plaintiff contends that the discipline she received for this incident was motivated by racial discrimination.  Defendant first responds that Plaintiff cannot establish a prima facie case because she has not demonstrated that similarly situated individuals outside of her protected class were treated more favorably.  Plaintiff asserts that her partner Washington was not investigated for his involvement in the incident.  Defendant argues that Washington is also African American, and is therefore an unsuitable comparator.  The Ninth Circuit, however, has stated that favorable treatment of other members of the protected class does not necessarily defeat plaintiff's claims at trial, and does not entitle defendant to summary judgment.  *See Lam v. University of Hawaii,* 40 F.3d 1551, 1561–1562 (9th Cir.1994) (in case brought by Asian woman against university alleging both race and sex bias, favorable treatment of other Asian women did not entitle defendant to summary judgment); *see also Peoples v. Cty. of Contra Costa*, No. C 07-00051 MHP, 2008 WL 2225671, at *8 (N.D. Cal. May 28, 2008) (finding that evidence that another African American received promotion did not entitle defendant to summary judgment on plaintiff's race discrimination claims).

Defendant next argues that Plaintiff has not shown that she was performing her job satisfactorily.  Relatedly, Defendant contends that legitimate, non-discriminatory reasons existed for disciplining Plaintiff because she undisputedly locked the patient's father out of the ambulance, separating him from his minor child, and had a significant conflict with the patient's

United States District Court
Northern District of California

1   father.

2          As Defendant has articulated a legitimate non-discriminatory reason for the adverse action,

3   Plaintiff must demonstrate that the articulated reason is a pretext for unlawful discrimination.

4   Plaintiff concedes that she has no direct evidence of discriminatory intent, and must therefore offer

5   "specific" and "substantial" evidence of pretext.   She fails to do so.  Plaintiff first argues that a

6   reasonable jury could find that it was improper to discipline her for locking the ambulance door

7   when she felt unsafe.  Opp. at 20.  This argument does not satisfy her burden.  Courts "only

8   require that an employer honestly believed its reason for its actions, even if its reason is 'foolish or

9   trivial or even baseless.'" *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1063 (9th Cir.

10  2002).  Plaintiff has put forth no evidence that the Department did not honestly believe its

11  proffered reasons for disciplining her.   *Id.*; *Cornwell v. Electra Cent. Credit Union*, 439 F.3d

12  1018, 1028-29, n.6 (9th Cir. 2006) (merely denying the credibility of defendant's proffered reason

13  for the challenged employment action or relying solely plaintiff's subjective beliefs that the action

14  was unnecessary are insufficient to show pretext).

15          Plaintiff also challenges so-called deficiencies in Zanoff's investigation, pointing out that

16  he did not record his interviews with the patient's parents, or watch the mother's video of the

17  incident.  Again, Plaintiff provides no support for her challenge to the integrity of the investigation

18  beyond her own subjective belief.  She does not offer any evidence to support an inference that

19  Zanoff's actions violated Department policy or compromised the investigation, or that he

20  employed investigatory techniques that were different from those used in similar situations.

21          Plaintiff also contends that Washington was not investigated for the incident, even though

22  he was involved in it.  However, Plaintiff fails to show that Washington committed similarly

23  serious misconduct that would warrant an investigation.  *Vasquez,* 349 F.3d at 641 (to be similarly

24  situated other employees must "display similar conduct"); *Hawn v. Exec. Jet Mgmt., Inc.,* 615 F.3d

25  1151, 1157 (9th Cir. 2010) (the employees need not be identical, but must be similar in material

26  respects).  Merely asserting that individuals are similarly-situated does not make them so.  *See*

27  *Forsberg v. Pac. Nw. Bell Tel. Co.,* 840 F.2d 1409, 1419 (9th Cir.1988). "[T]o be deemed

28  'similarly-situated', the individuals with whom the plaintiff seeks to compare his/her treatment

United States District Court
Northern District of California

23

United States District Court
Northern District of California

1    must have dealt with the same supervisor, have been subject to the same standards[,] and have

2    engaged in the same conduct without such differentiating or mitigating circumstances that would

3    distinguish their conduct or the employer's treatment of them for it." *Ferretti v. Pfizer Inc.*, No.

4    11-CV-04486, 2013 WL 140088, at *17 (N.D. Cal. Jan. 10, 2013).

5         Plaintiff does not argue that Washington engaged in conduct that was similarly serious to

6    hers, e.g., locking the minor patient's parents out of the ambulance and having an altercation with

7    the patient's father.  Instead, she contends without evidentiary support that Washington was

8    equally responsible for transporting the patient and for the patient care report.[9]  Even if true,

9    Plaintiff makes no effort to show that these actions alone were sufficiently serious to have

10   warranted an investigation of Washington.

11        Beyond this, Plaintiff responds with a mishmash of facts which do not amount to specific

12   or substantial evidence of pretext.  She argues that she filed a General Form documenting the

13   incident and complained to Captain Khairul Ali about her partner Washington's lack of support.  It

14   is unclear how this establishes pretext.  She also asserts that she was investigated for the incident

15   even though the patient's family did not file a complaint.  Again, she does not attempt to explain

16   how this constitutes evidence of pretext.[10]

17        Finally, Defendant points out that Plaintiff challenged the discipline and was afforded

18   every available level of review, including a *Skelly* hearing and an appeal to the Fire Commission,

19   and that the discipline was sustained at both levels by independent decision makers.  Plaintiff

20

21   [9] Plaintiff and Washington both signed the Patient Care Report.

22   [10] Plaintiff also argues that the investigation was initiated because a group of Station 49 members
     talked to Deputy Chief Gardner.  The court will not consider this contention because it rests on

23   Gardner's testimony before the Fire Commission.  Federal Rule of Evidence 804(b)(1) provides a
     hearsay exception for former testimony where it has been shown that the declarant is unavailable

24   to testify.  Plaintiff filed excerpts from the Fire Commission testimony of Nancy Galvin, Simon
     Pang, Khairul Ali, and Gardner.  She has made no attempt to show that any of these individuals

25   are unavailable or that the transcript is otherwise admissible.  Accordingly, the Fire Commission
     testimony of Galvin, Pang, Ali, and Gardner will not be considered in ruling on the present

26   motion.  *See Lopez v. United Parcel Serv., Inc.*, No. C08-05396 SI, 2010 WL 728205, at *4 (N.D.
     Cal. Mar. 1, 2010) (ruling on summary judgment motion, finding that testimony from different

27   trial was inadmissible hearsay and did not meet the hearsay exception under Rule 804(b)(1) where
     plaintiff failed to show that declarant was unavailable).  The court sustains Defendant's objection

28   to that testimony.

1    offers no rejoinder.

2          "Title VII may still be violated where the ultimate decisionmaker, lacking individual

3    discriminatory intent, takes an adverse employment action in reliance on factors affected by

4    another decisionmaker's discriminatory animus," *Galdamez v. Potter*, 415 F.3d 1015, 1026 n. 9

5    (9th Cir. 2005) (citing *Price Waterhouse v. Hopkins,* 490 U.S. 228, 232–35 (1989) (describing

6    process by which the employer's "Policy Board," informed by various comments from partners,

7    some of which demonstrated an illegal bias based on sex, took an adverse employment action)).

8    However, if an employer's independent investigation "results in an adverse action for reasons

9    unrelated to the supervisor's original biased action," then the employer will not be liable.  *Staub v.*

10   *Proctor Hosp.*, 562 U.S. 411, 421 (2011).

11         Plaintiff does not specifically identify who she believes harbored discriminatory animus.

12   To the extent that she claims that Hayes-White or other individuals at Station 49 were biased

13   against her, she has made no showing that the Fire Commission's hearing and final decision

14   upholding the four-day suspension were not independent.

15         In sum, even assuming Plaintiff is able to establish a prima facie case, she has not offered

16   sufficient evidence of pretext to create a triable issue of fact with respect to this incident.

17                       **b.  Early 2011 Denial of Shift Change Request**

18         In early 2011, Plaintiff requested to change from night shift to day shift for personal

19   reasons.  On April 11, 2011, Plaintiff's request was denied.   According to Plaintiff, Myers denied

20   her request and shortly after, "a white female with less seniority, was given the earlier shift."  Opp.

21   at 8; Anderson Depo. 364:13-365:12.

22         Defendant objects that Plaintiff's assertions lack foundation and personal knowledge, but

23   does not identify the specific objectionable statements.  The court will first address Plaintiff's

24   statement that Chief Myers denied the request, followed by her assertion that a white woman with

25   less seniority was given a shift change.

26         Plaintiff provides no foundation to establish her personal knowledge that Chief Myers

27   denied her requested shift change.  Defendant's objection is sustained.  Defendant asserts that

28   Myers did not deny Plaintiff's request for a shift change, but instead forwarded it to the

United States District Court
Northern District of California

25

1    Administrative Office, and asked them to "review file for openings available and operational

2    impact." Myers Dep. 35:14-15; 37:8-10, Ex. 63. Myers claims that the Administrative Office

3    denied Plaintiff's request.

4        With respect to Plaintiff's statement about a white comparator, Plaintiff explains that at

5    some point she partnered with the white female who received the shift change. This could provide

6    a basis for her personal knowledge of the fact that the shift was given to a less senior white

7    woman. *See Surrell*, 518 F.3d at 1107 (district court should have considered plaintiff's testimony

8    that she "had never seen any black people promoted to the office management positions since [she

9    has] been in the Stockton Office" because it was based on plaintiff's personal knowledge).

10   Defendant's objection is overruled.

11       Plaintiff has presented evidence that she requested a shift change, that her request was

12   denied, and that the requested shift was given to a less senior white woman. Although Chief

13   Myers testified that he is "not aware" of another Station 49 employee who was moved from night

14   to day shift around the time in question, Defendant did not otherwise put forth supporting

15   evidence, such as a review of its own time records. Viewing the evidence in the light most

16   favorable to Plaintiff, a reasonable juror could infer that shift assignments are made by the

17   Administrative Office. Plaintiff has therefore raised a genuine issue of material fact as to whether

18   the Administrative Office's denial of her request for a shift change in early 2011 constituted racial

19   discrimination.

20                    c.   **September 2012 Accident in Station 49 Parking Lot**

21       On September 24, 2012, Plaintiff hit a parked car in the Station 49 parking lot while

22   driving an ambulance. She decided not to report the accident because the car was not damaged. A

23   Station 49 employee submitted an anonymous General Form to Deputy Chief of Operations Mark

24   Gonzales reporting the incident. At Gonzales's request, Captain Anthony Robinson conducted an

25   investigation and found that Plaintiff had violated the Department's Vehicle Operations Manual-

26   Accident Procedure.

27       On November 2, 2012, Hayes-White notified Plaintiff that she intended to impose a two-

28   day suspension for violation of the Department's Vehicle Operations Manual Accident

Procedures, which states:

> Vehicle Operations Manual—Accident Procedures: An officer or any member in charge of a Department apparatus or vehicle involved in an accident is required to contact the Department of Emergency Communications which will dispatch the appropriate Accident Scene Investigator (ASI).  When a Department vehicle is involved in an accident, the officer or member in charge of a vehicle must submit a General Form, addressed to the Deputy Chief, Operations, describing the Accident.

November 2, 2012 Letter from Hayes-White to Plaintiff, Hayes-White Decl., Ex. K.

On January 7, 2013, the Department held a *Skelly* hearing.  Hearing Officer Guzman concurred with Hayes-White's decision to impose a two-day suspension because Plaintiff admitted that she hit the car with the ambulance, did not report it, and did not provide any new evidence to support her case.  On February 1, 2013, Hayes-White imposed a two-day suspension.

Plaintiff appealed the suspension to the Fire Commission, which held a hearing.  On May 31, 2013, Fire Commissioners Hardeman, Evans, Covington, and Carmignani unanimously found that Plaintiff had committed the violation, but voted to reduce the two-day suspension to a written reprimand.

Plaintiff argues that her partner, Maneka Spidle "was not disciplined for failing to file a [General Form] regarding the accident despite being the spotter." Opp. at 12.  Spidle is Asian/Pacific Islander.  The court will construe this as an argument that the incident was racially discriminatory because Plaintiff was disciplined, but her non-African-American partner was not, even though she was acting as "spotter," and was therefore also involved in the incident.

Other employees are similarly situated to the plaintiff when they "have similar jobs and display similar conduct." *Vasquez,* 349 F.3d at 641.  The employees need not be identical, but must be similar in "material respects."  *Hawn,* 615 F.3d at 1157. Materiality depends on the context and is a question of fact that "cannot be mechanically resolved." *Id.* at 1157–58.  Plaintiff presents no evidence that spotters are considered responsible for accidents caused by drivers, or that Spidle was "in charge of the vehicle" under the terms of the policy, or was otherwise similarly

United States District Court
Northern District of California

situated.[11] *See* Opp. at 12, 21.  Viewing the facts in the light most favorable to Plaintiff, a reasonable juror could find that Plaintiff and Spidle violated the same written policy, which requires a "member in charge of a vehicle" to report the accident by submitting a General Form. *Earl*, 658 F.3d at 1115 (finding that plaintiff and the other recruiters violated similar company policies and that the district court erred in requiring an exact match between plaintiff's violation and those of the other recruiters).  The court therefore concludes that Plaintiff has presented a triable issue as to whether Spidle is a similarly situated comparator who was treated more favorably than Plaintiff.

        Defendant has put forth a legitimate, nondiscriminatory reason for the discipline, namely that Plaintiff hit a car with the ambulance and failed to report it, which violated Department policy.  Plaintiff does not dispute that she did those things.   And again, Plaintiff does not explicitly make an argument regarding pretext.  Opp. at 12, 19, 21.  Instead, she asserts that she did not have to report the accident because she did not cause any damage.  The text of the policy itself does not recognize such an exception.  The only evidence Plaintiff identifies to support her interpretation is her own deposition testimony, in which she recounts two other occasions in which she was in an ambulance that was hit by another vehicle, and the ambulances were put back in service because there was no damage.  Plaintiff states that she did not believe she was required to notify a battalion chief when she hit a car in the parking lot on September 24, 2012 because on the two prior occasions the "battalion chief [was] basically, "Why am I here? There's no damage.  So go back in service."  Anderson Depo. at 385: 6-10.   Presumably, Plaintiff is trying to argue that the proffered reasons for the discipline were pretextual, because she did not actually violate the policy.  Standing alone, Plaintiff's testimony about how she interpreted a battalion chief's response to her prior report of a no-damage accident, is insufficient to create a genuine issue of material fact about whether no-damage accidents were exempt from the policy's reporting requirement.  Plaintiff puts forth no other evidence to support her proffered interpretation of the

---

[11] At the hearing Plaintiff claimed that there was a duty for the spotter to report accidents, but could not provide a citation to the record or any competent, admissible evidence showing such a policy.

United States District Court
Northern District of California

policy.

Nevertheless, construing the facts in the light most favorable to Plaintiff, a reasonable juror could find pretext, and thus racial discrimination, based on the fact that both Plaintiff and her non-African American partner were culpable actors in the incident, but only Plaintiff was disciplined. Summary judgment is therefore denied as to this incident.

### d.   October 2012: Missed Overtime Shift

Plaintiff also challenges the discipline she received for missing a mandatory WDO shift in violation of the tardiness and AWOL policy. Under that policy, employees who are late for more than ten minutes are considered tardy, and employees who are late for more than thirty minutes are considered AWOL. On October 18, 2012, the AO posted the WDO list for the following day. It is undisputed that: Plaintiff worked on October 18, 2015; that she checked the WDO list around 12:00 p.m.; that the WDO list was posted at 12:10 p.m., which was before the end of Plaintiff's shift; that she did not check the WDO list at the end of her October 18, 2012 shift; that her name was on the WDO list; and that she did not report for her WDO shift on October 19, 2015. The Department imposed a one-day suspension. Plaintiff requested a *Skelly* hearing. Hearing Officer Guzman concurred with Hayes-White's decision to impose a one-day suspension.

To begin with, Plaintiff does not attempt to establish her prima facie case. She does not identify any similarly situated non-African American comparators who received more favorable treatment. In fact, Defendant offered evidence that sixteen other Station 49 members were disciplined for violating the tardiness policy during 2012: four white males, nine white females, two Asian males, and one African American male. Three of these employees received a violation for missing a mandatory WDO: two white males and one white female. Two received one-day of discipline and the other received two-days (progressive). Plaintiff's claim fails for this reason alone.

Defendant proffered a legitimate, nondiscriminatory reason for the discipline: Plaintiff did not report for her shift. Plaintiff responds by arguing that the WDO list was not posted until 12:10 p.m., even though pursuant to Department policy it should have been posted by 8:00 a.m. This is non-responsive. The fact that the WDO list may have been posted late did not relieve her of her

1   duty to check the WDO at the end of her shift.  Plaintiff unequivocally conceded that she failed to

2   do so.   Anderson Depo. 347:1-6, 13-25 (Q: "The policy is, you're supposed to [check the WDO

3   list] at the end of the shift, correct?  A: Yes.  Q: And you didn't do that, correct? A: That's correct.

4   Q: And if you had, then you would have learned of your mandatory, correct? A: Yes").

5        Rather than presenting evidence of pretext, Plaintiff argues that it was unfair to discipline

6   her.  Plaintiff asserts that Hayes-White acted unfairly because she knew that the list had been

7   posted late before she made the final decision to impose discipline.  Plaintiff has not shown that

8   Hayes-White deviated from the Department's established policy or practice in imposing discipline.

9   *Diaz v. Eagle Produce Ltd. P'ship,* 521 F.3d 1201, 1214 (9th Cir. 2008).  Rather, she argues that

10   the decision was unwise or unfair.  This is insufficient to show pretext.  *Cornwell*, 439 F.3d at

11   1028-29, n.6 (9th Cir. 2006); *Hooker v. Parker-Hannifin Corp.*, No. SACV 11-483-JST EX, 2012

12   WL 1156437, at *3 (C.D. Cal. Apr. 3, 2012) *aff'd*, 585 F. App'x 386 (9th Cir. 2014) (granting

13   summary judgment to defendant on race and retaliation claims because plaintiff failed to provide

14   sufficient evidence of pretext where plaintiff failed to show that defendant had continued to

15   employ anyone who violated the AWOL policy).

16        Summary judgment is therefore granted on this claim.

17                    **e.   Non-Selection For The 115th Fire Academy**

18        Plaintiff claims that the failure to select her for the 115th Fire Academy constituted race

19   discrimination.  Plaintiff has established a prima facie case that she was eligible for the Academy

20   based on her seniority and that other members outside her racial group were selected.

21        Defendant has put forth evidence of a legitimate, non-discriminatory reason.  Hayes-White

22   states that she did not select Plaintiff because of her disciplinary record.  Under a Memorandum of

23   Understanding between the union, Local 798, and the City, the Chief can choose not to promote or

24   select a member for a position if they have received discipline within the preceding one to three

25   years, depending on the severity.   Hayes-White states that consistent with this policy and

26   practice, she has passed over other Station 49 members due to disciplinary reasons including: a

27   white male for the 114th Fire Academy class; a white male and a white female for the 115th class;

28   and two Hispanic males, a white male, and a white female for the 117th class.  Plaintiff does not

United States District Court
Northern District of California

30

dispute this evidence.

Furthermore, Plaintiff fails to present any evidence that the Department's proffered reason for passing her over for the 115th Academy is pretextual. *See* Opp. 24-25. At oral argument, Plaintiff asserted that her non-selection was discriminatory because the underlying reason for her non-selection – her disciplinary record – was itself the product of racial discrimination. Plaintiff has offered no evidence to support this argument. The record does not indicate whether Plaintiff sustained other discipline that she does not raise in this lawsuit. She did not submit the disciplinary record that Hayes-White would have reviewed at the time, nor did she submit comparable records of those who she contends were treated more favorably.

In light of Defendant's legitimate, nondiscriminatory reason and undisputed evidence showing that members outside of Plaintiff's protected class were treated similarly based on their disciplinary records, Plaintiff has failed to establish a genuine issue of material fact regarding her claim for race discrimination based on her failure to be selected for the 115th Fire Academy. Summary judgment is therefore granted on this claim.

### f.   Dismissal from the 117th Fire Academy

Plaintiff was one of fifty-five recruits selected to participate in the 117th Academy. Ten of the fifty-five recruits were African American, and three of those recruits (including Plaintiff) were women. Plaintiff was released from the 117th Fire Academy after she failed several tests. Two other recruits (both white males) resigned from the 117th Academy.

Plaintiff claims that her dismissal from the 117th Fire Academy constituted race discrimination. Once again, she does not attempt to establish her prima facie case. This alone is fatal to her claim.

Defendant contends that Plaintiff was discharged from the 117th Academy due to poor performance which resulted in her receipt of a disqualifying number of deficiencies. It is undisputed that Plaintiff failed numerous tests. At the end of the third week of her training, Plaintiff failed the 22-foot Ladder Beam Raise Spur Position and the Ladder and Hose Hoist Knots exams. Plaintiff admits that on the 22-foot Ladder exam she was in the wrong position and that she had at least one problem with the knots exam. Plaintiff received eight deficiencies.

United States District Court
Northern District of California

At the end of the fifth week, Plaintiff failed the Make and Break 1 exam, and received three more deficiencies.  Plaintiff claimed that she failed the test due to faulty equipment.  However, other recruits used the same equipment and did not experience problems.  After the exam, training staff tested the equipment that Plaintiff alleged to have caused her to fail another test; they determined that it was not defective.  Defendant also states that the test was timed and Plaintiff did not complete the test in time because she was walking.

At the end of the sixth week, Plaintiff failed the Circulator Lead Breakdown Exam and received three more deficiencies.  The following week, Plaintiff failed the Rescue Knots Exam and the 50-foot Ladder Insider Pole exam, for which she received four more deficiencies, bringing her total to eighteen.  Plaintiff admits that her team lost control of the ladder on the 50-foot ladder test.  She baldly asserts that the loss of control of the ladder was due to the actions of another recruit, and that the instructors unreasonably blamed her.  She provides no support for this beyond her own subjective belief.  Chief Williams recommended Plaintiff for release from the Academy.  Hayes-White reviewed Plaintiff's performance and terminated Plaintiff from the Academy.

Defendant points out that multiple people involved in the decision to terminate Plaintiff from the 117th Academy are all, like Plaintiff, African American women.  These include the Director of Training who recommended Plaintiff's release from the Academy, the Training Captain, and Lieutenant DeJarlais.   Defendants also put forth sworn declarations from the training lieutenants who state that they evaluated Plaintiff based solely on her performance.

Plaintiff argues that she was released from the Academy because she was graded more harshly than other recruits and was given faulty equipment.  The only evidence in the record supporting Plaintiff's assertions is her self-serving testimony.  *See* Opp. at 13-14 (citing Anderson Depo. 627:21-628:18, 610:2-12, 634:5-635:14, 639:12-640:19, 653:6-654:15, 657:3-13, 759:19-779:8, 780:5-781:19; Anderson Decl. ¶ 46).  That the evidence is self-serving, of course, does not render it improper.  "[D]eclarations are often self-serving, and this is properly so because the party submitting it would use the declaration to support his or her position.  Although the source of the evidence may have some bearing on its credibility and on the weight it may be given by a trier of fact, the district court may not disregard a piece of evidence at the summary judgment stage solely

1   based on its self-serving nature." *Nigro v. Sears, Roebuck & Co*., 784 F.3d 495, 497 (9th Cir.

2   2015).

3   However, "a self-serving declaration does not always create a genuine issue of material

4   fact for summary judgment: The district court can disregard a self-serving declaration that states

5   only conclusions and not facts that would be admissible evidence." *Id.* (citing *Villiarimo v. Aloha*

6   *Island Air, Inc.,* 281 F.3d 1054, 1059 n. 5, 1061 (9th Cir. 2002) (holding that the district court

7   properly disregarded the declaration that included facts beyond the declarant's personal

8   knowledge and did not indicate how she knew the facts to be true); *F.T.C.,* 104 F.3d at 1171 ("A

9   conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is

10   insufficient to create a genuine issue of material fact.")); *Bradley v. Harcourt, Brace & Co.,* 104

11   F.3d 267, 270 (9th Cir. 1996) ("an employee's subjective personal judgments of her competence

12   alone do not raise a genuine issue of material fact.").

13   In *Villiarimo*, the plaintiff contended that she had been fired from her job as a ramp

14   supervisor because of gender-based discrimination.  281 F.3d at 1054.  In an "uncorroborated

15   affidavit and [in] deposition testimony," the plaintiff declared that male ramp agents who

16   committed the same on-the-job errors as her were punished less severely than she was.  *Id.* at 1059

17   and n.5.  The Ninth Circuit noted that the affidavit and deposition testimony "provides no

18   indication how she knows this to be true," and held that the district court properly disregarded this

19   evidence.  *Id.*

20   Like the plaintiff's affidavit and deposition testimony in *Villiarimo*, Plaintiff's deposition

21   testimony and declaration are wholly uncorroborated.  Plaintiff does not provide admissible

22   evidentiary support for her belief that she performed the tests adequately, that others were graded

23   less harshly, or that she did not commit the errors for which she received deficiencies.  For

24   example, Plaintiff claims that another recruit did not receive any deficiency points even though he

25   had committed a critical fail action.  However, Plaintiff does not have personal knowledge that the

26   other recruit did in fact commit a critical fail action, or that he did not receive deficiency points.

27   She bases her assertion on what she supposedly heard from other recruits who talked to the recruit

28   in question.  Plaintiff's statements regarding what others may have told her lack foundation and

United States District Court
Northern District of California

United States District Court
Northern District of California

1  constitute inadmissible hearsay. *Jacobsen v. Filler,* 790 F.2d 1362, 1367 (9th Cir. 1986)

2  (deposition testimony about what others told the deponent is not based on personal knowledge and

3  is inadmissible hearsay).

4        There is no admissible evidence that other recruits made similar mistakes but did not

5  receive deficiency points, or that her evaluators graded her more harshly than other recruits.

6  Plaintiff's declaration that "the team lost control of the ladder due to the actions of another recruit,

7  but the instructors blamed me," [Anderson Decl. ¶ 46] is conclusory and lacks detailed facts or

8  supporting evidence and is insufficient to create a genuine issue of material fact. *Hansen v. U.S.*, 7

9  F.3d 137, 138 (9th Cir.1993) (per curiam); *F.T.C.*, 104 F.3d at 1171.

10        Plaintiff offers no confirming evidence—such as other recruits' grading sheets, statements

11  from other witnesses, or admissions—that might support her belief that similarly-situated recruits

12  were graded less harshly.  Plaintiff's uncorroborated testimony is insufficient to establish that the

13  evaluators' reasons for marking down her performance were pretextual, and, in fact, she admits

14  some of her errors.  Additionally, Plaintiff has put forth no evidence that recruits with a similar

15  number of deficiency points were not dismissed from the Fire Academy.  Therefore, summary

16  judgment is granted on this claim.

17              **g.  Plaintiff's Discrimination Claim Considered Collectively**

18        Plaintiff argues that the court should not view each of these events in isolation, but must

19  take a "holistic" approach to reviewing Plaintiff's claims of "even minor offenses" to support her

20  claim of an adverse action for discrimination.  Opp. at 25.  Her sole support for this argument is

21  inapposite.  She cites *Yanowitz v. L'Oreal USA, Inc.,* 36 Cal.4th 1028 (2005), which discusses

22  retaliation, and not discrimination.  The *Yanowitz* court explained that "a series of separate

23  retaliatory acts collectively may constitute an 'adverse employment action' even if some or all of

24  the component acts might not be individually actionable."  *Yanowitz,* 36 Cal. 4th at 1058.  As

25  explained below, the legal standard for what constitutes an adverse employment action for

26  purposes of retaliation is broader than the standard for an adverse employment action for a

27  discrimination claim.  *Blount*, 982 F. Supp. 2d at 1086 ("Plaintiff has a lower burden to establish

28  an adverse employment action on a claim of retaliation compared to a discrimination claim.").

United States District Court
Northern District of California

1    While the court may properly view a series of incidents collectively to determine the existence of

2    an adverse employment action for a FEHA retaliation claim, Plaintiff does not cite support for her

3    view that this approach applies to discrimination claims.  Courts have not used a collective

4    approach when evaluating adverse employment actions in Title VII discrimination cases.  *Id.* at

5    1084; *Leland,* 576 F.Supp.2d at1091 (N.D. Cal. 2008) (finding that a series of separate but related

6    acts collectively established *hostile work environment*).

### D.  Plaintiff's Claims for Retaliation

7

8        Plaintiff briefing fails to specify the actions she challenges as retaliatory.  Opp. at 25-28.

9    At the hearing, Plaintiff identified Defendant's responses to and/or handling of the following

10   incidents as retaliatory: 1) the September 2009 incident at Riordan High School; 2) her early 2011

11   request for a shift change; 3) the April 2011 comment by Dr. Sporer; 4) the July 2011 inquiry

12   regarding a missing laptop; 5) the August 2011 coaching by Captains Salan and Filiss; 6) the

13   October 2011 payment for an overtime shift; 7) the September 2012 accident in the Station 49

14   parking lot; 8) the October 2012 missed overtime shift; 9) Captain Schorr's review of her patient

15   care reports in December 2012; 10) July 2013 response to car vandalism; 11) her failure to be

16   selected for the 115th Fire Academy; and 12) her dismissal from the 117th Fire Academy.

### 1.  Legal Framework for Retaliation Claims

17

18       Both Title VII and FEHA make it an unlawful employment practice for an employer to

19   discriminate against any person because the person participated in proceedings under the statues

20   by making a charge, testifying, assisting or participating in any manner, or opposed acts made

21   unlawful by the statutes.  42 U.S.C. § 2000e-3(a); Cal. Gov. C. § 12940(h).

22       As with discrimination under Title VII and FEHA, the court must apply a burden-shifting

23   analysis to determine whether an employer has retaliated against an employee.  *Villiarimo*, 281

24   F.3d at 1064 (retaliation under Title VII); *Yanowitz*, 36 Cal.4th at 1042 (retaliation under FEHA).

25   To establish a *prima facie* case of retaliation, a plaintiff must demonstrate: 1) she was engaged in

26   protected activity; 2) defendant took an adverse employment action; and 3) a causal connection

27   existed between plaintiff's protected activity and defendant's adverse employment action.

28   *Cornwell*, 439 F.3d at 1034-35.

United States District Court
Northern District of California

If the plaintiff establishes a prima facie case of retaliation, the burden shifts to defendant to articulate a legitimate, nonretaliatory reason for the adverse employment action. *Surrell,* 518 F.3d at 1106; *Yanowitz*, 36 Cal. 4th at 1042. "If the employer produces a legitimate reason for the adverse employment action, the presumption of retaliation 'drops out of the picture,' and the burden shifts back to the employee to prove intentional retaliation." *Yanowitz*, 36 Cal. 4th at 1042; *Surrell*, 518 F.3d at 1108.

### a.  Protected Activity

There are two types of protected activity for purposes of a retaliation claim under Title VII or FEHA: participation and opposition.  Plaintiff appears to rest solely on the participation clause. Participation involves filing a complaint, testifying, assisting or participating in "in the machinery set up" to enforce the provisions of Title VII and FEHA. *Hashimoto v. Dalton*, 118 F. 3d 671, 680 (9th Cir. 1997); *Yanowitz*, 36 Cal.4th at 1042 (retaliation claim under the FEHA applies the parallel standard that an employee engages in protected activity when the person has filed a complaint, testified, or assisted in any proceeding under section 12940(h)); *see also* 2 C.C.R. §11021(a).

Plaintiff argues that she engaged in protected activity by complaining about discrimination and retaliation in violation of Title VII and FEHA.  Plaintiff filed her first EEOC charge in July 2011[12] and her second in March 2012.[13]  She also states that she "complained internally about the racist behavior of her partner and of discrimination and retaliation." Opp. at 27.  *Villiarimo*, 281 F.3d at 1064 (filing an internal complaint can constitute protected activity); *Passantino v. Johnson & Johnson Consumer Products, Inc.*, 212 F.3d 493, 506 (9th Cir. 2000) (informal complaints to supervisor constituted protected activity); *Moyo v. Gomez*, 40 F.3d 982 (9th Cir.1994) (allowing retaliation claim based on informal protest of allegedly discriminatory policy).

---

[12] Plaintiff's July 2011 EEOC charge listed her discipline resulting from the 2009 Riordan High School incident, Dr. Sporer's comment, her altercation with Hellesto, the anonymous note about parking left in her locker, and the incident in which her supervisor asked her to locate the laptop.

[13] Plaintiff's March 2012 EEOC charge claimed race and gender discrimination and retaliation based on the coaching she received in August 2011 from Captains Filiss and Salan, and an investigation of alleged misconduct regarding Plaintiff's "demeanor" toward a patient in custody at the police station.

### b.  Adverse Employment Action

The definition of adverse employment action for retaliation claims is broader than that which applies to discrimination claims.  Plaintiff need only show that the alleged retaliatory act "might well have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. and Santa Fe Ry. Co. v. White,* 548 U.S. 53, 68 (2006).  The adverse employment action need not be severe.  *McAlindin v. Cnty. of San Diego,* 192 F.3d 1226, 1239 (9th Cir. 1999); *Bouman v. Block,* 940 F.2d 1211, 1229 (9th Cir.1991) (plaintiff "need not show that she was fired, demoted or suffered some financial loss as a result" of the employer's action to state a retaliation claim); *Yanowitz,* 36 Cal. 4th at 1051 (for FEHA retaliation claim plaintiff must show that she was subject to an adverse employment action that "materially affects the terms, conditions, or privileges of employment.").

When considering whether an alleged retaliatory act is an adverse employment action, "[c]ontext matters." *Burlington N. and Santa Fe Ry. Co.,* 548 U.S. at 69.  For example, a "schedule change in an employee's work schedule may make little difference to many workers, but may matter enormously to a young mother with school-age children."  *Id.*

### c.  Causal Link

"Title VII retaliation claims must be proved according to traditional principles of but-for causation.... This requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Nassar,* 133 S.Ct. at 2528, 2533; *Thompson v. Donahoe*, 961 F.Supp.2d 1017, 1029 (N.D. Cal. 2014).

"Causation sufficient to establish the third element of the *prima facie* case may be inferred from circumstantial evidence, such as the employer's knowledge that the plaintiff engaged in protected activities and the proximity in time between the protected action and the allegedly retaliatory employment decision." *Cornwell*, 439 F.3d at 1035; *Villiarimo*, 281 F.3d at 1065 (in some cases, causation can be inferred from timing alone where an adverse employment action follows on the heels of protected activity); *Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987).  In addition, the plaintiff must make some showing sufficient for a reasonable trier of fact to infer that the defendant was aware that the plaintiff had engaged in protected activity.  *Raad v.*

1 | *Fairbanks N. Star Borough Sch. Dist.*, 323 F.3d 1185, 1197 (9th Cir. 2003) *opinion amended on*

2 | *denial of reh'g*, No. 00-35999, 2003 WL 21027351 (9th Cir. May 8, 2003) (citing *Cohen v. Fred*

3 | *Meyer, Inc.,* 686 F.2d 793, 796 (9th Cir. 1982)); *Cornwell*, 439 F.3d at 1035 (affirming grant of

4 | summary judgment on retaliation claim, where plaintiff had put forth no evidence that the decision

5 | maker was aware of his protected activity).

### 2. Incidents Challenged as Retaliatory

7 | Plaintiff's briefing on her retaliation claims does not cite to any record evidence at all. *See*

8 | Opp. at 25-28. Additionally, for each of the incidents that she challenges as retaliatory, she fails to

9 | identify the protected activity to which the adverse employment action is causally linked. In

10 | determining whether to grant or deny summary judgment, it is not a court's task "to scour the

11 | record in search of a genuine issue of triable fact." *Keenan v. Allan,* 91 F.3d 1275, 1279 (9th Cir.

12 | 1996) (internal quotation marks omitted). Rather, a court is entitled to rely on the nonmoving

13 | party to "identify with reasonable particularity the evidence that precludes summary judgment."

14 | *Id.* Despite these obvious flaws, the court will analyze each of Plaintiff's challenged incidents,

15 | and will attempt to construe the record in the light most favorable to Plaintiff.

### a. September 2009 Riordan High School Incident

17 | The details of the Riordan High School incident are discussed above. Plaintiff claims that

18 | her four-day suspension was retaliatory. To establish a prima facie case of retaliation, Plaintiff

19 | must first demonstrate that she was engaged in a protected activity and that she suffered an

20 | adverse action. At the hearing, Plaintiff clarified that the protected activities with respect to this

21 | incident were her complaints about Moulton in 2006 and Hellesto in 2009. *Passantino*, 212 F.3d

22 | at 506 (informal complaints to supervisor constituted protected activity). Her four-day suspension

23 | constitutes an adverse action.

24 | Plaintiff has not, however, demonstrated that her protected activity was causally related to

25 | the four-day suspension. To establish causation, Plaintiff relies solely on the temporal proximity

26 | between her complaints and the decision to discipline her. Opp. at 28. In some cases, causation

27 | can be inferred from timing alone where an adverse employment action "follows on the heels of

28 | protected activity." *Passantino,* 212 F.3d at 507. In order to support an inference of retaliatory

United States District Court
Northern District of California

United States District Court
Northern District of California

1   motive based on timing alone, the adverse action must have occurred "fairly soon after the

2   employee's protected expression." *Villiarimo*, 281 F.3d at 1065.  Causation will only be inferred

3   from timing alone if the proximity is "very close."  *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268,

4   273-74 (2001) (per curiam).  Plaintiff's complaint about the July 2006 Moulton incident occurred

5   well over three years before she was first notified in February 2010 of her four-day suspension for

6   the Riordan High School incident.  This is far too long, by itself, to give rise to an inference of

7   causation.

8         As to Plaintiff's July 2009 complaint about Hellesto, this occurred seven months before

9   Hayes-White initially notified Plaintiff that she intended to impose a four-day suspension in

10  February 2010, and over a year before the Fire Commission made its final decision to impose the

11  suspension in September 2010.  Other courts within this Circuit have found that the temporal

12  proximity of seven months, standing alone, is insufficient to support an inference of retaliatory

13  motive.  *Keifer v. Hamilton Engine Sales, Inc.*, No. CIVS042077LKKDAD, 2006 WL 2620926, at

14  *7 (E.D. Cal. Sept. 13, 2006) (seven months insufficient to establish causation element at

15  summary judgment); *Christenson v. Boeing Co.*, No. CV 03-1800-HA, 2004 WL 2110707, at *8

16  (D. Or. Sept. 22, 2004) (same); *Mahoe v. Operating Eng'rs Local Union No. 3 of the Int'l Union of

17  Operating Eng'rs, AFL-CIO*, No. CIV. 13-00186 HG-BMK, 2013 WL 5447261, at *7 (D. Haw.

18  Sept. 27, 2013) (seven months insufficient to establish causation element at motion to dismiss

19  stage); *See also Villiarimo*, 281 F.3d at 1065 (citing *Filipovic v. K & R Express Sys., Inc.,* 176

20  F.3d 390, 398–99 (7th Cir. 1999) (four months too long); *Davidson v. Midelfort Clinic, Ltd.,* 133

21  F.3d 499, 511 (7th Cir. 1998) (five months); *Conner v. Schnuck Markets, Inc.,* 121 F.3d 1390,

22  1395 (10th Cir. 1997) (four months)).

23        Even if Plaintiff were able to satisfy the causation element, her claim fails on other

24  grounds.  Defendant has proffered a legitimate, nonretaliatory reason for the four-day suspension,

25  namely that Plaintiff violated four policies: 1) Section 3918—Altercation; 2) Section 3919—

26  Proper Behavior; and 3) Section 3923—Acts Detrimental to the Welfare of the Department.

27  Plaintiff has not put forth any evidence to show that this reason is pretextual.  Moreover, Hayes-

28  Whites' decision to impose the discipline was considered and upheld by the Fire Commission.

1    Plaintiff does not attempt to show that the Fire Commission had retaliatory animus, or somehow

2    failed to act independently in reaching its decision.  Defendant is entitled to summary judgment

3    regarding this incident.

4                    **b.   Early 2011 Denial of Shift Change Request**

5          Plaintiff next claims that the denial of her request for a shift change in early 2011 was

6    retaliatory.  While denial of a shift change request may constitute a retaliatory adverse action,

7    Plaintiff has put forth no evidence of a causal link between the denial of her request and a

8    protected activity.  *See* Opp. at 8, 26-28.  Plaintiff fails to present any admissible evidence that

9    identifies the person who denied her shift change, or demonstrates that the decision maker was

10   aware that she had engaged in some protected activity.  This is fatal to her claim.  *Raad*, 323 F.3d

11   at 1197 (affirming grant of summary judgment for employer where plaintiff failed to point to any

12   evidence in the record supporting her assertion that the particular principals who made the

13   allegedly retaliatory hiring decisions, were in fact aware of her complaints.).

14         Defendant's motion for summary judgment with respect to this claim is therefore granted.

15                    **c.   April 2011: Comment by Dr. Sporer**

16         Plaintiff claims that the Department's handling of her complaint about Dr. Sporer's

17   comment was retaliatory.  As described above, on April 15, 2011, Dr. Sporer made an offensive

18   racist comment to Plaintiff.  He never made any other offensive comments to Plaintiff after that

19   incident.      Plaintiff reported the comment to Bushong, who reported the comment to DHR.

20   Because Dr. Sporer was not a Department or CCSF employee, but instead worked for UCSF,

21   DHR referred the matter to UCSF's human resources department.  Bushong consulted with DHR

22   regarding the substance of Plaintiff's complaint.  Bushong and DHR concluded that because Dr.

23   Sporer's comment was a one-time occurrence, it did not rise to the level of workplace hostile

24   environment harassment or disparate treatment.  On April 18, 2011, Bushong sent Plaintiff a letter

25   explaining this finding.

26         Plaintiff alleges that the Defendant's handling of her complaint about Dr. Sporer's

27   comment was retaliatory.  She argues that there is no documentation that her EEO complaint was

28   actually referred to the UCSF human resources department.  However, she has not explained how

United States District Court
Northern District of California

1    Defendant's alleged failure to follow up on a referral to another employer's human resources

2    department qualifies as an adverse action for purposes of retaliation.  Opp. at 9; Brunner Decl. ¶

3    14.  Plaintiff must demonstrate that the alleged retaliatory act "might well have dissuaded a

4    reasonable worker from making or supporting a charge of discrimination." *Burlington N. and*

5    *Santa Fe Ry. Co.,* 548 U.S. at 68.   She makes no attempt to do so.  Summary judgment is

6    therefore granted on this claim.

7    ### d.  July 2011: Captain Calls Plaintiff Regarding Missing Laptop

8        On July 6, 2011, Captain Raymond Crawford called Plaintiff after she finished her shift to

9    tell her that the crew could not find the laptop that belonged in her ambulance.  Crawford ordered

10   her to return to work and prepare a General Form, which she did.  After turning in the General

11   Form, Plaintiff was told that the crew had located the laptop in the ambulance.

12       Plaintiff claims that this incident was retaliatory.  Assuming that Crawford's call and order

13   to write a General Form constitutes an adverse action, Plaintiff has offered no evidence of a causal

14   link between protected activity and Crawford's actions.  *See* Opp. at 9; 26-28.  She has not

15   presented any evidence that Crawford was aware that she had engaged in protected activity.

16   Defendant is therefore entitled to summary judgment with respect to this incident.

17   ### e.  August 2011 Coaching by Captains Salan and Filiss

18       On July 28, 2011, Plaintiff filed a continuing action EEOC complaint of race and gender

19   discrimination and retaliation.  In August 2011, two supervisory captains coached Plaintiff about

20   her work performance, and Plaintiff asserts that both of these counselings were retaliatory.

21   ### i.  Coaching by Captain Salan

22       As described above in the factual recitations, Plaintiff was counselled by Salan regarding a

23   conversation she had with him on August 18, 2011 about potentially partnering with another

24   paramedic.[14]   Plaintiff did not identify a protective activity; the court will construe Plaintiff's

25

26   _____

     [14] During Plaintiff's counseling session, Salan acknowledged that there may have been a
27   misunderstanding about Plaintiff's comments.  Plaintiff claims that Salan offered to help Plaintiff
     clear up the misunderstanding. Anderson Decl. ¶ 37.  Defendant objected to this as inadmissible
28   hearsay.  The court does not rely on this evidence in reaching its opinion and therefore denies the
     objection as moot.

filing of her July 28, 2011 EEOC charge as the protected act for this claim.  Plaintiff claims that she suffered an adverse action in the form of a written memo that was placed in her disciplinary file.  She cites to the Myers Deposition at 42:18-44:19, Ex. 66 in support of this assertion. However, review of the cited evidence does not support Plaintiff's contention.  Plaintiff also argues that an oral coaching session constitutes an adverse employment action because it could lead to further discipline, and therefore could dissuade an employee from complaining about discrimination.  Opp. at 27.  Viewing the facts in the light most favorable to Plaintiff, the court finds that Plaintiff could put forth sufficient facts to establish that coaching within the Department's system constitutes an adverse employment action.  The fact that Salan's coaching occurred approximately three weeks after Plaintiff filed her EEOC charge is sufficient circumstantial evidence of a causal link.

However, Plaintiff has once again failed to establish that the alleged retaliatory actor was aware of her protected activity.  Salan submitted a sworn declaration that at the time of the coaching session he was not aware that Plaintiff had filed an EEOC Charge or complaint with any other entity.  Plaintiff has put forth no evidence to rebut this, or to suggest that anyone else involved in the decision had knowledge of her protected activity.  Her claim therefore fails.

Plaintiff states that she filed a complaint with Hayes-White, claiming that the counseling constituted discriminatory and retaliatory treatment, and that Hayes-White chose not to investigate the matter and determined there were no rule violations.  The court construes this as an argument that the Hayes-White's decision not to investigate was retaliatory itself.  However, Plaintiff has offered no direct evidence that Hayes-White harbored retaliatory animus against her, nor did she present circumstantial evidence of retaliation, such as Hayes-White's investigation of similar complaints. *Brown v. Dep't of Pub. Safety*, 446 F. App'x 70, 72-73 (9th Cir. 2011) (employee could not sustain race discrimination claim based on Department's failure to investigate 52 incidents of insubordination and rule violations was due to racial discrimination).

Under California law, an employer who knows or should have known of unlawful retaliation and fails to take immediate and appropriate action may be liable.  However, a plaintiff does not have an independent claim for failure to investigate unlawful retaliation unless actionable

United States District Court
Northern District of California

1   misconduct occurred.  *Thompson v. City Of Monrovia*, 186 Cal. App. 4th 860, 880 (2010) (citing

2   *Trujillo v. North County Transit Dist.*, 63 Cal.App.4th 280, 288 (1998)).  Plaintiff's claim that

3   Salan's counseling was retaliatory fails; so too must her claim for failure to investigate.

### ii.   Coaching by Captain Filiss

5        Plaintiff received verbal coaching from Filiss on August 23, 2011 for leaving her shift

6   early.  It is undisputed that Plaintiff left her shift early that day.  Plaintiff asserts that it was

7   common practice for Station 49 employees to leave early, and that other paramedics did not

8   receive coaching for similar conduct.    Filiss' coaching occurred less than a month after Plaintiff

9   filed her first EEOC charge, which is sufficient circumstantial evidence of a causal link between

10   the protected activity and the adverse action.

11        Filiss states that the Emergency Medical Services Authority annual on-site inspections at

12   Station 49 were approaching in September, and she told Plaintiff she should not have left her shift

13   early because there was plenty of work to do to prepare for the upcoming inspections.  Filiss also

14   submitted an unrebutted sworn declaration that at the time of the coaching she had no knowledge

15   of Plaintiff's EEOC Charge or complaint with any other agency.  Once again, if the decision

16   maker has no knowledge of the protected activity, Plaintiff cannot establish the requisite causal

17   link.

18        Plaintiff claims that although she complained about the Filiss coaching several times,

19   Defendant never mentioned that Filiss coached her because she was concerned about the

20   upcoming inspections.  The court will construe this as an argument regarding pretext.  First of all,

21   Plaintiff offers no evidence to support this assertion, much less "specific and substantial"

22   evidence.  *See* Opp. at 10-11, 27.  Moreover, even if the Department did not initially tell Plaintiff

23   about concerns regarding upcoming inspections, Plaintiff has presented no evidence of

24   "incompatible" explanations from the Department.  *Nidds v. Schindler Elevator Corp.,* 113 F.3d

25   912, 918 (9th Cir. 1997) (presence of "shifting" or different justifications for an adverse action is

26   not sufficient to defeat summary judgment when those justifications "are not incompatible").

27        Plaintiff also filed a complaint with Hayes-White claiming that Filiss's counseling was

28   unjust, that she was the victim of discrimination and retaliation, and that she believed the

1  Department should have investigated these "aggressive and unnecessary counselings."  Opp. at 11

2  (citing Anderson Decl. ¶ 38), 24, 27.   As noted above, any claim for a failure to investigate is

3  contingent on actionable misconduct occurring.  Because Plaintiff's claim that Filiss's counseling

4  was retaliatory fails, so too does her claim for failure to investigate.

5         In sum, Plaintiff fails to present any evidence of a causal connection between her EEOC

6  Charge and the coaching sessions, for it is undisputed that both Salan and Filiss were not aware of

7  Plaintiff's EEOC Charge.  Furthermore, she has put forth no evidence to show that the

8  Defendant's articulated non-retaliatory reasons for the coaching sessions were pretextual.

9  Therefore, Defendant is entitled to summary judgment as to this claim.

### f.   October 2011: EMT Overtime Shift

11         In October 2011, Plaintiff signed up for an EMT-designated overtime shift.  Lieutenant

12  Neuneker first calculated her overtime at the lower EMT rate instead of her paramedic rate.[15]

13  Plaintiff complained to Filiss and was paid overtime for the shift at the proper rate.  Plaintiff has

14  not shown any adverse employment action because she received the correct payment.  *Brooks*, 229

15  F.3d at 929 (no actionable adverse action where employer corrected action in response to

16  employee's complaint).  Plaintiff has also failed to present evidence that Neuneker was aware that

17  she had engaged in protected activity.  Defendant's motion for summary judgment is granted with

18  respect to this claim.

### g.   September 2012 Accident in Station 49 Parking Lot

20         On September 24, 2012, Plaintiff hit a parked car in the Station 49 with an ambulance, as

21  discussed above.  She decided not to report the accident because the car was not damaged.

22  Captain Robinson investigated the incident and found that Plaintiff had violated the Department's

23  Vehicle Operations Manual- Accident Procedure.  On November 2, 2012, Hayes-White notified

24  Plaintiff that she intended to impose a two-day suspension.  On January 7, 2013, the Department

25  held a *Skelly* hearing and Hearing Officer Guzman concurred with Hayes-White's decision.  On

---

[15] Defendant objects to Plaintiff's evidence in support of this claim—Anderson Decl. ¶ 39, Ex. M and Anderson Depo. 170:2-173:22—on the basis that it is replete with inadmissible hearsay regarding statements made by Neuneker and others.  The court does not rely on this evidence in reaching its decision and therefore denies this objection as moot.

February 1, 2013, Hayes-White imposed the two-day suspension, which Plaintiff appealed to the Fire Commission.  On May 31, 2013, Fire Commissioners Hardeman, Evans, Covington, and Carmignani unanimously found that Plaintiff had committed the violation, but voted to reduce the two-day suspension to a written reprimand.

Plaintiff filed a second EEOC complaint in March of 2012.  The court will construe this as the protected activity upon which Plaintiff bases this claim because it is the closest in temporal proximity.  In light of Plaintiff's silence on the subject, the court will also construe Plaintiff's claim as relying on temporal proximity as circumstantial evidence of causation.  Plaintiff first received discipline for this incident in February 2013, approximately eleven months after Plaintiff's second EEOC complaint.  In June 2013, which was one year and three months after her EEOC complaint, the Fire Commission found that Plaintiff had committed the violation, and reduced the two-day suspension to a written reprimand.  As already discussed, in some cases, causation can be inferred from timing alone where an adverse employment action follows on the heels of protected activity.  However, even the shorter period of eleven months is insufficient, on its own, to give rise to an inference of causation.

Plaintiff also offers no evidence that Gonzales, (who requested the investigation into the incident), Robinson, (who investigated and found that Plaintiff had violated the Vehicle Operations Manual- Accident Procedure), or the any members of the Fire Commission, (who upheld the finding that Plaintiff committed a violation and imposed a written reprimand), had any knowledge of her July 2011 or March 2012 EEOC complaints, or any other protected activity.  Plaintiff thus fails to show a genuine issue of material fact regarding a retaliation claim based on this incident, and Defendant's motion for summary judgment is granted.

### h.  October 2012: Missed Overtime Shift

As discussed above, on October 19, 2012, Plaintiff was disciplined for missing a WDO shift.  The Department imposed a one-day suspension.  The Department held a *Skelly* hearing, and Hearing Officer Guzman concurred in the decision to impose a one-day suspension.  Plaintiff claims that this discipline was retaliatory.

The court will construe Plaintiff's causation evidence as being based solely on temporal

1    proximity between the filing of her second EEOC charge in March 2012, and the imposition of

2    discipline seven months later.  As noted above in the discussion of the Riordan High School

3    incident, temporal proximity of seven months, standing alone, is insufficient to establish

4    causation.

5           Even assuming that Plaintiff were able to establish her prima facie case, her claim still

6    fails.  Defendant offered a legitimate, nonretaliatory reason for the discipline: Plaintiff did not

7    report for her shift and violated Department policy. Defendant also presented evidence of sixteen

8    other Station 49 members who were disciplined for violating the same policy during 2012, only

9    one of whom was African American.  Plaintiff has offered no evidence of pretext.  For example,

10   she did not argue that she received harsher discipline for missing her mandatory WDO; indeed, her

11   one-day suspension is consistent with the discipline imposed on the three other employees who

12   missed a WDO.  Summary judgment is therefore granted.

### i.   December 2012: Captain Schorr Reviews Plaintiff's Patient Care Reports

13
14          Captain Justin Schorr oversaw the quality of paramedic Patient Care Reports ("PCRs").

15   Plaintiff alleges that in December 2012, Schorr began to review all of Plaintiff's charts, "looking

16   for mistakes" and applying "extra scrutiny." Opp. at 13.  Plaintiff alleges that Schorr engaged in

17   retaliation by critiquing her for minor mistakes on her reports.  Once again, it is undisputed that

18   Schorr had no knowledge of Plaintiff's EEOC complaints, a fact which is fatal to this claim.

19          Plaintiff's only evidence in support of this claim is her own declaration and deposition

20   testimony.  See Opp. at 13 (citing Anderson Depo. 396:16-399:4; 400:10-403:9; Anderson Decl., ¶

21   42).  As discussed above, a self-serving declaration can be disregarded if it "states only

22   conclusions and not facts that would be admissible evidence." Villiarimo, 281 F.3d at 1059 n. 5;

23   F.T.C., 104 F.3d at 1171.  Plaintiff has not demonstrated personal knowledge regarding how

24   Schorr reviewed other paramedics' PCRs, or whether her PCRs were scrutinized any more harshly

25   than those prepared by others.  Absent a showing of disparate treatment, Plaintiff cannot establish

26   that review of her PCRs constituted a retaliatory adverse action.  Brooks, 229 F.3d at 929.  Schorr

27   submitted unrebutted testimony that he was responsible for ensuring that PCRs met the San

28

46

Francisco Emergency Medical Services Agency guidelines, and that during the time in question, he was reviewing "upwards of 300 PCRs each week to ensure they met guidelines."  Schorr Decl. ¶¶ 4, 6.  Schorr states that he called in other paramedics to review their PCRs.

Plaintiff fails to present evidence of any causal link between Schorr's review of her PCRs and any protected activity.  Additionally, she does not present any admissible evidence that Defendant's stated non-retaliatory reason for reviewing the PCRs was pretextual.  Defendant's motion for summary judgment is granted on this claim.

### j.   July 2013: Plaintiff Complains that her Car was Vandalized in the Station 49 Parking Lot

On July 30, 2013, Plaintiff parked her personal car in the Station 49 parking lot, which is locked and enclosed by a fence topped with barbed wire.  The next day, Plaintiff noticed a pool of fluid under her car that appeared to be coolant.  Plaintiff states that her mechanic examined the radiator and told her it had been vandalized.  Plaintiff filed a General Form reporting that her radiator had been vandalized.  Zanoff investigated and found insufficient evidence to charge anyone with disciplinary action.  Plaintiff filed a stress claim after the incident stating that she could no longer work at Station 49 because she felt unsafe.  The Department placed her on temporary modified duty.

Plaintiff's theory of retaliation appears to be that Zanoff conducted an inadequate investigation for retaliatory reasons.  Opp. at 14-15, 23-24.  Zanoff interviewed a special services officer, Plaintiff's mechanic, San Francisco Police Officer Scott Ryan regarding Plaintiff's police report, Battalion Chief Michael Thompson, and EMS Captain James Fazackerley, and also spoke with Plaintiff.   After Zanoff consulted with Deputy Chief Gonzales, the Department decided not to interview everyone at Station 49 who could have had access to Plaintiff's car due to the large amount of resources necessary to interview hundreds of people.  Zanoff referred Plaintiff's EEO claim to DHR; the parties do not describe what happened with respect to the EEO claim.

Plaintiff presents no evidence beyond her subjective belief that Zanoff's investigation was inadequate.  For example, Plaintiff offers no evidence of similar investigations that were investigated more thoroughly, nor has she identified any SFFD policies or investigation standards

1   with which Zanoff failed to comply.  Plaintiff merely relies on unsubstantiated claims that "Zanoff

2   deliberately chose to talk only to the people who would not have any useful information," without

3   citing to any evidence.  Opp. at 23.  This is insufficient.

4        Plaintiff also presented no evidence that Zanoff or Gonzales were aware of any protected

5   activity by Plaintiff.  *See* Opp. 14-15, 23-24.  Moreover, Plaintiff's second EEOC complaint

6   occurred in March 2012, over a year before Zanoff conducted the investigation in August 2013,

7   which is insufficient to establish causation.

8        Finally, Plaintiff argues that the Department's response to the incident was inadequate and

9   therefore retaliatory.  Plaintiff points out that Myers never issued a station-wide warning that

10  vandalism would not be tolerated, nor were video cameras or additional security measures added

11  to the parking lot after her complaint.  Opp. at 15.  Again, Plaintiff offers no evidence that station-

12  wide warnings, additional security measures, or other responses of a similar magnitude were

13  implemented after similar incidents.  In fact, Defendant asserts that Hayes-White' own car tires

14  were vandalized when she was on Department property, and no one was ever held responsible.

15        Defendant's motion for summary judgment with respect to this claim is granted.

16               **k.  Non-Selection For The 115th Fire Academy**

17        Plaintiff argues that the failure to select her to attend the 115th Fire Academy was

18  retaliatory.  As noted above, Plaintiff engaged in protected activity by filing complaints with the

19  EEOC.  Plaintiff suffered an adverse action when Hayes-White did not select Plaintiff for the Fire

20  Academy, although she was eligible based on her seniority.  *Brooks*, 229 F.3d at 928 (refusal to

21  consider for promotion constitutes adverse action).  Hayes-White was aware that Plaintiff had filed

22  EEOC complaints.

23        Plaintiff is silent on the issue of causation.  The court will construe Plaintiff's causation

24  evidence as being based solely on temporal proximity between the filing of her second EEOC

25  charge in March 2012, and her non-selection for the 115th Fire Academy in July 2013.[16]  As

26  ─────────────────

27  [16] While the parties' briefing does not specify when Station 49 members were selected for the
    115th Fire Academy and merely states that the non-selection for the 115th occurred in 2013,
    correspondence between Smith and Hayes-White in the record indicates that Station 49 members

28  were selected for the 115th Fire Academy around July 2013.

United States District Court
Northern District of California

1    discussed above, temporal proximity of sixteen months is insufficient to establish causation.

2           Moreover, Defendant offers a legitimate nonretaliatory reason, stating that Hayes-White

3    did not select Plaintiff because of her disciplinary record.  Hayes-White states that consistent with

4    this policy, she has passed over other Station 49 members due to their disciplinary records

5    including: a white male for the 114th Fire Academy class; a white male and a white female for the

6    115th class; and two Hispanic males, a white male, and a white female for the 117th class.

7           Plaintiff does not present any evidence that the Department's proffered reason for passing

8    her over for the 115th Academy is pretextual.  Defendant's undisputed evidence shows that other

9    Station 49 members were treated similarly based on their disciplinary records.  Furthermore,

10   Defendant's position is buttressed by the fact that Plaintiff was selected to participate in the 117th

11   Fire Academy when she did not have as many recent disciplinary actions.  At the hearing, Plaintiff

12   argued that the decision to not select Plaintiff due to her disciplinary record constituted retaliation,

13   because Plaintiff should not have been disciplined in the first place.  However, as already stated

14   above, Plaintiff offered no evidence to support this argument.  The record does not indicate

15   whether Plaintiff sustained other discipline that she does not challenge in this lawsuit.  She did not

16   submit the disciplinary record that Hayes-White would have reviewed at the time, nor did she

17   submit comparable records of those who she contends were treated more favorably.

18          Defendant's motion for summary judgment for Plaintiff's claim for retaliation based on

19   Plaintiff's non-selection for the 115th Fire Academy is granted.

20                          **l.    Dismissal from the 117th Fire Academy**

21          Plaintiff was selected to participate in the 117th Fire Academy, but she was released after

22   she failed several tests.  Plaintiff argues that her dismissal from the 117th Fire Academy was

23   retaliatory.  Viewing the facts in the light most favorable to the Plaintiff, the court will assume that

24   Plaintiff can meet her prima facie case: Plaintiff engaged in protected activity by filing EEOC

25   complaints and the present lawsuit.  She suffered an adverse action when she was dismissed from

26   the 117th Fire Academy.  Plaintiff has presented evidence that the "117th Fire Academy

27   instructors were well aware of Anderson's lawsuit."  Opp. at 13-14 (citing Caba Depo. 45:12-

28   46:14; Anderson Depo. 619:20-620:6).  In his deposition, Caba stated that he discussed the fact of

United States District Court
Northern District of California

1    Plaintiff's lawsuit against the SFFD with "all of the instructors," and with Captain Nikki Griffey.

2    Caba Depo. 46:6-14.

3           Defendant submitted evidence of legitimate, non-retaliatory reasons for her discharge from

4    the 117th Academy, namely that Plaintiff failed a number of tests.  Plaintiff claims, but does not

5    put forth any evidence to support that her instructors evaluated her more harshly than other

6    recruits.  *See* Opp. at 13-14.  As discussed above, Plaintiff has failed to present admissible

7    evidence that she was, in fact, graded more harshly than other recruits or that she was given faulty

8    equipment.  Plaintiff has failed to put forth any other evidence to show that Defendant's proffered

9    reason for releasing her was pretextual.  Summary judgment is therefore appropriate.

**m.  "Holistic" Approach to Pretext**

11          Plaintiff argues that "the entirety of the events show pretext."  Opp. at 30.  Citing to

12   *Yanowitz*, she urges the court to take a "holistic approach," rather than to view each incident in

13   isolation:

14          Anderson constantly complained that she was being subjected to unjust discipline
15          and harassment.  SFFD constantly refused to investigate the issues or performed
            only cursory reviews of her complaints.  This failure to investigate is contrasted
16          with the SFFD's willingness to pursue to the fullest any complaints against
            Anderson, no matter how minor.
17

18   *Id.*  The court has undertaken an exhaustive review of each of Plaintiff's claims. Viewing them

19   together, the evidence does not support such broad-brush and conclusory statements.

20          Moreover, retaliatory actions cannot take place without retaliatory actors.  The events

21   challenged by Plaintiff involved a multitude of actors.  The undisputed evidence establishes that

22   the vast majority of these actors did not know that Plaintiff had engaged in protected activity.

23   Plaintiff argues that although she "cannot show that every SFFD officer involved in these

24   incidents was motivated by retaliatory animus, she can show that Chief Hayes-White was the

25   originator and decision maker on every single one of the disciplinary actions against her and the

26   decisions not to properly investigate [Plaintiff's] complaints."  Opp. at 28.  This bald statement is

27   flatly contradicted by the record evidence.  The only incident where Hayes-White could be

28   considered the "originator" was when she decided not to select Plaintiff for the 115th Fire

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Academy.  Hayes-White was not the originator for many of the incidents challenged by Plaintiff.

2    There is no evidence to suggest that Hayes-White was involved in the early 2011 denial of her

3    request for a shift change, the comment by Dr. Sporer, the call by Captain Crawford about the

4    missing laptop, the decisions by Salan or Filiss to coach Plaintiff, the payment for Plaintiff's

5    October 2011 EMT overtime shift, Schorr's review of Plaintiff's PCRs, or the investigation into

6    the vandalism of Plaintiff's car.  Hayes-White was not involved in any of the grading at the 117th

7    Fire Academy or the recommendation that Plaintiff be dismissed.  Moreover, Plaintiff did not

8    introduce a shred of evidence to suggest that Hayes-White encouraged others to retaliate against

9    Plaintiff or to otherwise treat her unfairly.

10       In the incidents where Hayes-White was involved in disciplinary decisions, Hayes-White

11   was usually not the final decision maker.  Plaintiff appealed the discipline she received for the

12   Riordan High incident and her failure to report her ambulance accident.  In both instances the

13   review sustained a finding of violation and upheld the imposition of discipline.  There is no

14   evidence that the reviewers failed to act independently, or that Hayes-White tainted their

15   decisions.

16       With two exceptions, (the two discrimination claims that survive summary judgment),

17   Plaintiff failed to proffer sufficient evidence to support an inference that she was treated less

18   favorably than a similarly situated individual, whether in the imposition of discipline, the quality

19   of an investigation, or in the Department's response to a complaint.

20       In sum, a "holistic review" does not reveal pretext.

21       **E.  Failure to Prevent Discrimination**

22       It is an unlawful employment practice under FEHA "for an employer ... to fail to take all

23   reasonable steps necessary to prevent discrimination and harassment from occurring" in the

24   workplace.  Cal. Govt. Code § 12940(k).  When a plaintiff seeks to recover damages based on a

25   claim of failure to prevent discrimination she must show three essential elements: 1) plaintiff was

26   subjected to discrimination; 2) defendant failed to take all reasonable steps to prevent

27   discrimination; and 3) this failure caused plaintiff to suffer injury, damage, loss or harm.  *Lelaind*,

28   576 F. Supp. 2d at 1103.

51

United States District Court
Northern District of California

1    Defendant moves for summary judgment on this claim solely on the basis that Plaintiff has

2  no surviving race discrimination claim.  MSJ at 25 (citing *Trujillo*, 63 Cal.App.4th 280).

3  However, two of Plaintiff's race discrimination claims may proceed to a jury: her early 2011

4  denial of a request for a shift change and her discipline for the ambulance accident in the Station

5  49 Parking Lot.  Defendant's motion for summary judgment on this claim fails as to these two

6  incidents.  *Gardner v. City of Berkeley*, 838 F. Supp. 2d 910, 926-27 (N.D. Cal. 2012); *Plaza v.*

7  *Comcast Cable Commc'ns Mgmt., LLC*, No. 14-CV-5430 YGR, 2015 WL 7770215, at *3 (N.D.

8  Cal. Dec. 3, 2015).

9    **V.        MOTION TO AMEND COMPLAINT**

10    On December 21, 2015, Plaintiff filed a motion for leave to file a second amended

11  complaint.  [Docket 77.]  Defendant filed a response to Plaintiff's administrative motion to shorten

12  time for her hearing, but otherwise did not substantively respond to the motion.  [Docket No. 79.]

13    **A.  Legal Standard**

14    Under Federal Rule of Civil Procedure 15(a), leave to amend should be granted as a matter

15  of course, at least until the defendant files a responsive pleading.  After that point, leave to amend

16  should be granted unless amendment would cause prejudice to the opposing party, is sought in bad

17  faith, is futile, or creates undue delay.  Fed. R. Civ. P. 15(a).  Rule 15(a) provides that the court

18  should "freely give leave when justice so requires."  Fed. R. Civ. P. 15(a).  "This policy is to be

19  applied with extreme liberality."  *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051

20  (9th Cir. 2003) (quotation omitted).  In the absence of an "apparent reason," such as undue delay,

21  bad faith, dilatory motive, prejudice to defendants, futility of the amendments, or repeated failure

22  to cure deficiencies in the complaint by prior amendment, it is an abuse of discretion for a district

23  court to refuse to grant leave to amend a complaint.  *Foman v. Davis*, 371 U.S. 178, 182 (1962);

24  *Lockheed Martin Corp. v. Network Solutions, Inc.*, 194 F.3d 980, 986 (9th Cir. 1999).  These

25  factors do not "merit equal weight," and "it is the consideration of prejudice to the opposing party

26  that carries the greatest weight."  *Eminence Capital*, 316 F.3d at 1052.  "Granting leave to amend

27  does not necessarily mean that the underlying allegations ultimately have merit."  *FlatWorld*

28  *Interactives LLC v. Apple Inc.*, 12-cv-01956-WHO, 2013 WL 6406437, at *3 (N.D. Cal. Dec. 6,

52

1  2013).  "Rather, '[a]bsent prejudice, or a strong showing of any of the remaining [ ] factors, there

2  exists a *presumption* under Rule 15(a) in favor of granting leave to amend.'"  *Id.* (quoting

3  *Eminence Capital*, 316 F.3d at 1052).

### B.  Analysis

5      Plaintiff moves pursuant to Federal Rule of Civil Procedure 15(a)(2) to amend her

6  complaint to add facts and causes of action related to her dismissal from the 118th Fire Academy,

7  which occurred on November 10, 2015.  She seeks to reopen discovery on those facts.

8      As Plaintiff's motion to amend was filed after Defendants moved for summary judgment,

9  they must make a "substantial showing" to support the amendment.  *See Maldonado v. City of*

10  *Oakland*, No. C 01 1970 MEJ, 2002 WL 826801, at *4 (N.D. Cal. April 29, 2002) (denying leave

11  to amend where plaintiff filed motion to amend to add police officer defendants two days before

12  noticed hearing date on defendant's summary judgment motion) (citing Schwarzer, Tashima &

13  Wagstaffe, *Federal Civil Procedure Before Trial*, § 8:420.1 (2002 ed.)).  This higher standard

14  prevents a party from using amendment to avoid summary judgment.  *See Schlacter-Jones v. Gen.*

15  *Tel. of Cal.,* 936 F.2d 435, 443 (9th Cir. 1991), *abrogated on other grounds by Cramer v. Consol.*

16  *Freightways, Inc.,* 255 F.3d 683 (9th Cir. 2001).

17      Plaintiff argues her dismissal from the 118th Fire Academy occurred recently, in

18  November 10, 2015, and she could not have conducted discovery earlier, as fact discovery closed

19  prior to her dismissal from the 118th Fire Academy.    Plaintiff concedes that allowing her to add

20  new facts and causes of action and to reopen discovery would prejudice Defendant, and proposes

21  pushing back the trial date to allow for discovery.  Plaintiff argues that her requested amendment

22  will streamline the process and will avoid separate litigation on cases that would clearly overlap.

23  However, none of her claims related to the 115th or the 117th Fire Academy survived summary

24  judgment.  Thus, any benefits of judicial economy from adding this new claim to the case at this

25  late stage in the litigation are minimal.

26      The court finds that given the advanced stage of this litigation, Defendant would be unduly

27  prejudiced by Plaintiff's amendment.  The parties' pretrial submissions are due at the end of this

28  month, with trial set to commence in less than two months.  Plaintiff's motion to amend is denied.

United States District Court
Northern District of California

United States District Court
Northern District of California

## VI.     SEALING MOTION

Plaintiff filed a motion to file the supporting declaration of Kevin Brunner under seal, along with all the attached exhibits.  [Docket No. 67.]  Defendant submitted a declaration in support of the motion to seal.  [Docket No. 70-1.]  The motion is denied because it is not narrowly tailored, fails to conform with the requirements of Civil Local Rule 79-5, and fails to meet the requirements for sealing under Ninth Circuit precedent.

As a public forum, the court has a policy of providing the public full access to documents filed with the court.  Civil Local Rule 79-5 states that a request to seal a document, or portions thereof, must be narrowly tailored to seek sealing only of sealable material.  In order to rebut the presumption of access to dispositive pleadings and attachments, such as a motion for summary judgment, a party must demonstrate a "compelling reason."  *Kamakana v. City & Cty. of Honolulu*, 447 F.3d 1172, 1180 (9th Cir. 2006).  Under Ninth Circuit precedent, party seeking sealing must present "articulable facts" identifying the interests favoring continued secrecy *and* to show that these specific interests overcame the presumption of access by outweighing the "public interest in understanding the judicial process." *Id.* at 1181 (internal citations omitted).

The motion to seal the Declaration of Kevin Brunner is not narrowly tailored to seek only sealing of sealable material and is not supported by a declaration showing a compelling reason for sealing these documents filed in relation to this motion for summary judgment.

The motion to seal broadly seeks to seal the entire Brunner Declaration and all exhibits.  Plaintiff argues that the documents contain information from third party personnel files, including disciplinary actions.  The court has reviewed the declaration and exhibits and finds that Plaintiff has failed to establish a compelling reason for blocking public access to these dispositive judicial proceedings.  The motion is therefore denied.

## VII.     CONCLUSION

For the reasons stated above, the court **grants in part and denies in part** Defendant's motion for summary judgment.  Plaintiff may pursue her race discrimination claims based on the 2011 denial of a shift assignment, and on discipline she received in September 2012 for hitting a parked car in the Station 49 parking lot.  She may also pursue her claim for failure to prevent

discrimination, but only with respect to those two incidents.  The court grants summary judgment on all other claims.

Plaintiff's motion to amend her complaint is **denied**.

Plaintiff's motion to seal is **denied**.

**IT IS SO ORDERED.**

Dated: March 14, 2016

_____
Donna M. Ryu
United States Magistrate Judge

United States District Court
Northern District of California